**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Kelly Mulcahy (Bar No. 305472)
548 Market Street, #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
kelly@kr.law

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VICIOUS BRANDS, INC. dba SAINTS & SINNERS HAIRCARE**, a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>**HOLLY CUTLER**, an individual, **THE SKIN SAINT, LLC**, a Michigan limited liability company, **FACE CO., LLC**, a Michigan limited liability company,<br><br>Defendants. | Case No. 3:24-CV-04996-LJC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**<br><br>Date:     November 12, 2024<br>Time:     10:30 a.m.<br>Ct:        Courtroom G<br>Judge:   Hon. Lisa J. Cisneros |

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION.............................................................................................................1

BACKGROUND ...........................................................................................................2

STATEMENT OF THE ISSUES TO BE DECIDED .......................................................3

ARGUMENT.................................................................................................................4

A.   Legal Standard for Motions Challenging Personal Jurisdiction..............................4

    1.   Purposeful Direction ...................................................................................5

    2.   Nexus Between Contacts and the Litigation ................................................6

    3.   Reasonableness.........................................................................................6

    4.   The Purposeful Direction Test Applied to Trademark Infringement Claims .7

B.   This Court has personal jurisdiction over Defendants. ..........................................8

    1.   Defendants purposefully directed their conduct at California when they marketed and sold infringing products in California. ....................................8

    2.   Plaintiff's claims arise out of Defendants' contacts with California, namely the marketing and sale of products bearing the Infringing Mark in California. ...................................................................................................9

    3.   Defendants have not made a compelling case that the exercise of jurisdiction would be unreasonable. ..........................................................10

C.   This Court is a proper venue under 28 U.S.C. §1391..........................................13

D.   Defendants have not made a strong showing of inconvenience necessary to warrant a venue transfer under 28 U.S.C. 1404(a).............................................13

CONCLUSION ...........................................................................................................16

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

i

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**<u>Cases</u>**

4

*Adobe Sys. Inc. v. Bargain Software Shop, LLC,*

5

No. C-14-3721 EMC, 2014 WL 6982515 (N.D. Cal. Dec. 8, 2014) .............................. 15

6

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC,*

7

666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........................................................................ 12

8

*AMA Multimedia, LLC v. Wanat,*

9

970 F.3d 1201 (9th Cir. 2020) ........................................................................................ 5

10

*Avery Dennison Corp. v. Sumpton,*

11

189 F.3d 868 (9th Cir. 1999) ................................................................................. 12, 15

12

*Ayla, LLC v. Alya Skin Pty. Ltd.,*

13

11 F.4th 972 (9th Cir. 2021) ........................................................................................... 7

14

*Barnes & Noble, Inc. v. LSI Corp.,*

15

823 F. Supp. 2d 980 (N.D. Cal. 2011) .......................................................................... 14

16

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,*

17

582 U.S. 255 (2017) ........................................................................................................ 6

18

*Burger King Corp. v. Rudzewicz,*

19

471 U.S. 462 (1985) ...................................................................................................... 11

20

*Calder v. Jones,*

21

465 U.S. 783 (1984) ........................................................................................................ 5

22

*Cisco Sys., Inc. v. Dexon Computer, Inc.,*

23

541 F. Supp. 3d 1009 (N.D. Cal. 2021) ........................................................... 7, 8, 9, 10

24

*Daimler AG v. Bauman,*

25

571 U.S. 117 (2014) ........................................................................................................ 4

26

*Decker Coal Co. v. Commonwealth Edison Co.,*

27

805 F.2d 834 (9th Cir. 1986) ........................................................................................ 14

28

*//*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Dole Food Co., Inc. v. Watts*,

  303 F.3d 1104 (9th Cir. 2002) ........................................................................ 5

*Fitbit, Inc. v. Koninklijke Philips N.V.*,

  336 F.R.D. 574 (N.D. Cal. 2020) ................................................................... 15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,

  592 U.S. 351 (2021) ........................................................................... 4, 5, 6

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,

  905 F.3d 597 (9th Cir. 2018) ....................................................................... 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,

  564 U.S. 915 (2011) ............................................................................... 4, 6

*Greenley v. Kochava, Inc.*,

  684 F. Supp. 3d 1024 (S.D. Cal. 2023) ......................................................... 15

*Gutierrez v. Amplify Energy Corp.*,

  634 F. Supp. 3d 780 (C.D. Cal. 2022) ........................................................... 11

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,

  601 F. Supp. 3d 625 (C.D. Cal. 2022) ........................................................... 11

*Kaia Foods, Inc. v. Bellafiore*,

  70 F. Supp. 3d 1178 (N.D. Cal. 2014) ........................................................... 13

*Keeton v. Hustler Magazine, Inc.*,

  465 U.S. 770, (1984) ............................................................................... 4, 5

*Nissan Motor Co. v. Nissan Computer Corp.*,

  89 F. Supp. 2d 1154 (C.D. Cal. 2000) ........................................................... 12

*Panetta v. SAP Am., Inc.*,

  No. C0501696RMW, 2005 WL 1774327 (N.D. Cal. July 26, 2005) ........................... 14

*Riot Games, Inc. v. Suga PTE, Ltd.*,

  638 F. Supp. 3d 1102 (C.D. Cal. 2022) ......................................................... 12

*Saperstein v. Dumont Aircraft Sales, LLC*,

  No. 16-CV-01926-WHO, 2016 WL 4241933 (N.D. Cal. Aug. 11, 2016) ..................... 12

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Schwarzenegger v. Fred Martin Motor Co.*,

    374 F.3d 797 (9th Cir. 2004) ................................................................ 5, 6, 10

*Sidco Indus. Inc. v. Wimar Tahoe Corp.*,

    768 F. Supp. 1343 (D. Or. 1991) ............................................................... 13

*Silk v. Bond*,

    65 F.4th 445 (9th Cir. 2023) ................................................................passim

*Tuazon v. R.J. Reynolds Tobacco Co.*,

    433 F.3d 1163 (9th Cir. 2006) ................................................................... 11

*Walden v. Fiore*,

    571 U.S. 277 (2014) ....................................................................... 4, 5, 6

*World-Wide Volkswagen Corp. v. Woodson*,

    444 U.S. 286 (1980) .............................................................................. 6

## Statutes

28 U.S.C. §1391 ................................................................................ 1, 3, 13

28 U.S.C. §1404(a) ............................................................................passim

## Rules

Fed. R. Civ. P. 4(k)(1)(A) ......................................................................... 4

1    Plaintiff Vicious Brands, Inc. dba Saints & Sinners ("Saints & Sinners" or "Plaintiff")

2  hereby opposes the Motion to Dismiss Complaint for Lack of Personal Jurisdiction and

3  Improper Venue filed by Defendants Holly Cutler, The Skin Saint, LLC, and Face Co.,

4  LLC. (D.E. No. 16.)

5                                    **INTRODUCTION**

6    Plaintiff markets and sells hair care products in connection with its registered,

7  stylized logo trademark. Defendants market and sell competitive beauty products using a

8  confusingly similar mark, including in California. Plaintiff has sued Defendants for

9  trademark infringement.

10    Defendants have moved to dismiss the action for lack of jurisdiction and improper

11  venue, or in the alternative, to transfer the case to Michigan for the convenience of the

12  parties. Defendants primarily argue that this Court does not have personal jurisdiction

13  over them because Defendants' sales of the infringing products in California comprise a

14  small portion of their total sales. However, courts in this Circuit have expressly rejected

15  Defendants' jurisdictional argument because the Ninth Circuit has not articulated a small

16  percentage of sales exception to the purposeful direction principles. Moreover,

17  Defendants have not met their burden of making a strong showing that the exercise of

18  jurisdiction would be unreasonable. Among other reasons, Defendants have not shown

19  that litigation in this Court would be so gravely difficult and inconvenient as to place

20  Defendants at a severe disadvantage.

21    Defendants also argue that this Court is not a proper venue under 28 U.S.C.

22  §1391(b)(2). Again, courts in this Circuit have expressly rejected Defendants' argument,

23  finding that in a trademark infringement action, a substantial part of the events occurs

24  where confusion of purchasers is likely to occur.

25    Finally, the relevant factors weigh against transferring this action under 28 U.S.C.

26  §1404(a) for the convenience of the parties and witnesses, where: a) Plaintiff's choice of

27  forum is entitled to substantial deference, b) litigating the case in Michigan would simply

28  shift any inconvenience from Defendants to Plaintiff, c) Defendants have not identified

Case No. 3:24-cv-04996-LJC                1        **PLAINTIFF'S OPPOSITION TO
                                                    DEFENDANTS' MOTION TO DISMISS**

1    any third-party witnesses who would be inconvenienced or evidence that would be

2    difficult to access, d) this Court is familiar with federal trademark laws and California law,

3    e) California has an interest in protecting its residents from consumer confusion, and f)

4    the median time to trial in this Court and in the Eastern District of Michigan are similar.

5           For all of these reasons, the Court should deny Defendants' motion.

6                                    **BACKGROUND**

7           Saints & Sinners is a Nevada corporation, which is registered to conduct business

8    in California. (Declaration of Diana Wilson in Support of Plaintiff's Opposition ("Wilson

9    Decl.") ¶¶2-3.) Saints & Sinners develops, markets, and sells luxury hair care products.

10   (Wilson Decl. ¶4.) Since at least 2016, Saints & Sinners has continuously used the below

11   stylized logo on and in connection with its hair care products throughout the United

12   States and internationally (the "SS Mark") (Wilson Decl. ¶5.):



17   Through extensive use, marketing, branding and promotion, the SS Mark has become

18   well-known in California, the United States, and internationally, enjoying substantial

19   recognition, goodwill, and association with Saints & Sinners (Wilson Decl. ¶7.)

20          Defendant Holly Cutler is the founder and owner of The Skin Saint, LLC and Face

21   Co., LLC. (Cutler Decl. ¶¶1, 3.) Defendant The Skin Saint, LLC owns and operates the

22   website https://theskinsaint.com/, which offers for sale infringing products throughout the

23   United States, including in California. (Declaration of Karl S. Kronenberger in Support of

24   Plaintiff's Opposition ("Kronenberger Decl.") ¶2 & Ex. A.)

25          In March 2021, Defendants began using the below mark (the "Infringing Mark") in

26   connection with their beauty products and services, including but not limited to, beauty

27   consultation services, cleansers, lotions, moisturizers, serums, masks, and creams.

28   (Cutler Decl. ¶10; Wilson Decl. ¶8.)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

§

On October 31, 2022, Defendant Face Co. filed an "in-use" trademark application, Serial No. 97/655,815 (the "'815 Application), with the USPTO for the Infringing Mark. (Kronenberger Decl. ¶3 & Ex. B.) On January 24, 2023, Face Co. assigned all of its rights, title and interest in the Infringing Mark and the '815 Application to Defendant Holly Cutler. (Kronenberger Decl. ¶4 & Ex. C.) On September 19, 2023, the '815 Application was published for opposition in the *Official Gazette.* (Kronenberger Decl. ¶5 & Ex. D.)

On January 17, 2024, Saints & Sinners initiated an opposition proceeding against the '815 Application with the Trademark Trial and Appeal Board, alleging likelihood of confusion with the SS Mark. (Kronenberger Decl. ¶6.) As part of the opposition proceeding, Defendant Holly Cutler was deposed on July 26, 2024. (Kronenberger Decl. ¶7.)

On July 31, 2024, Defendant Holly Cutler assigned all of her rights, title and interest in the Infringing Mark and the '815 Application to Defendant The Skin Saint, LLC. This assignment was filed and recorded with the USPTO on August 7, 2024. (Kronenberger Decl. ¶8 & Ex. E.) All three Defendants have used and owned the Infringing Mark.

### STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether the Court has personal jurisdiction over Defendants based on their marketing and sale of infringing products in California?

2.    Whether this Court is a proper venue for this action under 28 U.S.C. §1391?

3.    Whether the Court should transfer this action for the convenience of the parties and witnesses under 28 U.S.C. §1404(a)?

//

//

**ARGUMENT**

**A.    Legal Standard for Motions Challenging Personal Jurisdiction**

A federal district court's jurisdiction over a defendant is the same as "the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). California "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

Under the Fourteenth Amendment's Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). This inquiry has long focused on the nature and extent of the defendant's relationship with the forum state. *See id.* And that "focus" has resulted in two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *See id.*

A federal court may exercise general jurisdiction over a defendant only if the defendant is essentially at home in the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Specific jurisdiction is different in that it "covers defendants less intimately connected with a State," and "only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 352, 359 (2021). While general jurisdiction depends on the relationship between the defendant and the forum, specific jurisdiction depends on the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, (1984)). "Although a nonresident [defendant]'s physical presence within the territorial jurisdiction of the court is not required," such a defendant must still have "minimum contacts" with the forum state "such that the maintenance of the suit

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   does not offend 'traditional notions of fair play and substantial justice'." *Id.* at 283 (citation

2   omitted).

3       With those principles in mind, the Ninth Circuit has "established a three-prong test

4   for analyzing a claim of specific personal jurisdiction." *Schwarzenegger v. Fred Martin*

5   *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). First, the non-resident defendant must

6   purposefully direct her activities or consummate some transaction with the forum or

7   resident thereof; or perform some act by which she purposefully avails herself of the

8   privilege of conducting activities in the forum, thereby invoking the benefits and

9   protections of its laws. *See id.* Second, the claim must be one which arises out of or

10  relates to the defendant's forum-related activities. *See id.* Third, the exercise of

11  jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

12  *See id.*

13      **1.  Purposeful Direction**

14      For a court to have specific jurisdiction over a defendant, the defendant must

15  purposefully direct its activities at the forum state or purposefully avail itself of the

16  privilege of conducting activities there. *See Schwarzenegger*, 374 F.3d at 802. For "suits

17  sounding in tort," the Ninth Circuit has applied a distinct "purposeful direction analysis."

18  *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (quotation omitted).

19  To show purposeful direction, a plaintiff typically alleges that the defendant took certain

20  "actions outside the forum state that are directed at the forum, such as the distribution in

21  the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803.

22  Specifically, the defendant must have "(1) committed an intentional act, (2) expressly

23  aimed at the forum state, (3) causing harm that the defendant knows is likely to be

24  suffered in the forum state." *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *Dole Food*

25  *Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

26      The Supreme Court has explained that the contacts supporting purposeful

27  direction "must be the defendant's own choice and not 'random, isolated, or fortuitous.'"

28  *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton*, 465 U.S. at 774). The defendant must

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   have "reached out beyond its home—by, for example, exploiting a market in the forum

2   state." *Id.* (quotations and alterations omitted). Thus, a defendant does not purposefully

3   direct her activities at the forum state when the unilateral activity of the plaintiff or a third

4   party is all that connects the defendant to the forum state. *See Walden*, 571 U.S. at 284-

5   85 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). Nor

6   does a defendant purposefully direct her activities at the forum state merely by directing

7   those activities at a person who happens to reside in the forum state, even if the

8   defendant knows the person resides there. *See id.* at 285. Instead, "it is the defendant's

9   own conduct that must form the necessary connection with the forum state." *Id.*

10          **2.      Nexus Between Contacts and the Litigation**

11          For specific jurisdiction to exist, the plaintiff's claims must also "arise out of or

12   relate to the defendant's contacts" with the forum state. *Ford Motor Co.*, 592 U.S. at 359

13   (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582

14   U.S. 255, 262 (2017). Claims "arise out of" the defendant's contacts with the forum state

15   when there is a causal connection between the contacts and the claims. *See id.* at 1026.

16   Claims that do not "arise out of" the defendant's contacts may nonetheless "relate to"

17   those contacts. *See id.* at 1026–28. The Supreme Court has not articulated a precise

18   "relate to" test, but if a company attempts to directly serve the market for its product in the

19   forum state, and its product causes an injury in the forum state, that is enough. *See id.* at

20   1027 (explaining that when a company serves the market of a forum state, and the

21   company's product causes an injury in the forum state, the forum state's courts have

22   jurisdiction over the company even if the specific product that caused the injury was not

23   designed, made, or sold by the company in the forum state).

24          **3.      Reasonableness**

25          Finally, "if the plaintiff succeeds in satisfying both of the first two prongs, the

26   burden then shifts to the defendant to 'present a compelling case' that the exercise of

27   jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    Courts in the Ninth Circuit use "a multi-factor balancing test to determine the

2    reasonableness of exercising personal jurisdiction over a non-resident defendant,

3    assessing: 1) the extent of the defendant's purposeful interjection into the forum state's

4    affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and

5    defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the

6    most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and

7    effective relief; and 7) the existence of an alternative forum." *Silk v. Bond*, 65 F.4th 445,

8    458 (9th Cir. 2023).

9        **4.    The Purposeful Direction Test Applied to Trademark Infringement**

10           **Claims**

11    **"**Trademark infringement is treated as tort-like for personal jurisdiction purposes,

12    and so we focus on purposeful direction here." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th

13    972, 979 (9th Cir. 2021). Where a defendant has knowingly sold infringing products in

14    California, she has purposefully directed her activities at California knowing that the harm

15    was likely to be suffered in California because "the sale of [infringing] products in

16    California would plainly harm [a plaintiff's] business interests there." *Cisco Sys., Inc. v.*

17    *Dexon Computer, Inc.*, 541 F. Supp. 3d 1009, 1016 (N.D. Cal. 2021). "By intentionally

18    'exploiting' the California market, [a defendant] purposefully direct[s] its conduct at

19    California." *Id.* The number of infringing products sold in California is irrelevant to this

20    inquiry, as the Ninth Circuit has not "articulate[d] a 'small percentage of sales' exception

21    to the purposeful direction principles." *Id.* at 1017. Thus, a defendant's repeated,

22    intentional, and direct sale of infringing products to California customers supports

23    specific jurisdiction so long as those sales were not random, isolated, or fortuitous,

24    even if the defendant sold many more products elsewhere. *See id.*

25    Second, where a defendant has sold infringing products in California, the

26    connection between the defendant's contacts with California and the plaintiff's trademark

27    infringement claims "could hardly be more direct." *Cisco Sys., Inc.*, 541 F. Supp. 3d at

28    1018. Specifically, a trademark infringement plaintiff's claims arise out of a defendant's

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  sales of infringing products in California because the defendant caused the plaintiff's
2  injuries in California by attempting to serve the California market. *See id.* at 1018.

3      In *Cisco Systems, Inc.*, the plaintiff brought an action against a nonresident
4  technology vendor for federal trademark infringement and counterfeiting. *See Cisco Sys.,*
5  *Inc.*, 541 F. Supp. 3d at 1014. The defendant moved to dismiss for lack of personal
6  jurisdiction, arguing that it had sold only 40 allegedly infringing products and 20 software
7  licenses to consumers in California between 2017 and 2020, which amounted to "1/8 of
8  1%" of its sales. *See id.* at 1017. The court rejected the defendant's argument, finding
9  that its "argument finds no support in Supreme Court or Ninth Circuit caselaw, which
10  does not articulate a 'small percentage of sales' exception to the purposeful direction
11  principles discussed above." *Id.*

12      Thus, unless a trademark defendant can make a compelling case that the exercise
13  of jurisdiction would be unreasonable, its intentional sale of infringing products in
14  California supports the exercise of personal jurisdiction.

15  **B.    This Court has personal jurisdiction over Defendants.**

16      This Court has personal jurisdiction over Defendants because: 1) Defendants
17  purposefully directed their marketing and sales at California, 2) Plaintiff's claims arise out
18  of Defendants' contacts with California, and 3) Defendants have not made a compelling
19  showing that the exercise of jurisdiction would be unreasonable.[1]

20      **1.    Defendants purposefully directed their conduct at California when**
21           **they marketed and sold infringing products in California.**

22      Defendants argue that they did not purposefully direct their conduct at California
23  because they do not target California in their marketing, because their websites are

24  _____

25  [1] While personal jurisdiction must be decided for each Defendant, Plaintiff's Complaint
   alleges that each Defendant used the Infringing Mark in connection with beauty products
26  sold in California, and thus refers to Defendants collectively throughout the Complaint,
   alleging that they jointly committed the infringement (Compl. ¶¶11-13, *passim.*)
27  Defendants have not presented any evidence suggesting that the three Defendants did
   not all jointly engage in the alleged infringement; to the contrary, Defendants' evidence
28  refers to Defendants collectively (Cutler Decl. *passim.*)

Case No. 3:24-cv-04996-LJC                    **PLAINTIFF'S OPPOSITION TO**
                                              **DEFENDANTS' MOTION TO DISMISS**

8

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  passive, and because they only had a small amount of sales in California. (Mot. at 6:27,

2  7:24-26.) Defendants' argument fails on all fronts.

3       First, contrary to Defendants' claim, Defendants maintain fully interactive websites

4  at https://theskinsaint.com/ and https://www.facebeautyscience.com/. These websites are

5  generally available to consumers in California, and they prominently display the Infringing

6  Mark. (Kronenberger Decl. ¶9 & Ex. F.) On Defendants' websites, customers in California

7  can purchase products bearing the Infringing Mark for delivery in California.[2]

8  (Kronenberger Decl. ¶10.)

9       Second, since March of 2021, Defendants' have sold 89 products bearing the

10  Infringing Mark in California (totaling $12,336.40). (Cutler Decl. ¶10.) Thus, this case is

11  highly analogous to *Cisco Systems, Inc.*, in which the court found that the defendant had

12  purposefully directed its infringing conduct at California when it sold 40 infringing

13  products and 20 infringing software licenses to customers in California.

14       In summary, Defendants purposefully directed their conduct toward California by

15  marketing and selling products bearing the Infringing Mark, even if those sales

16  constituted a relatively small portion of Defendants' total sales.

17       **2.      Plaintiff's claims arise out of Defendants' contacts with California,**

18            **namely the marketing and sale of products bearing the Infringing Mark**

19            **in California.**

20       Defendants argue that Saints & Sinners' claims do not arise out of Defendants'

21  "forum-related activities" because Defendants' interactions with California are minimal.

22  (Mot. at 8:23.) This argument lacks merit.

23       In *Cisco Systems, Inc.*, the court found that the connection between the

24  defendant's contacts with California and the plaintiff's claims "could hardly be more

25  direct." *Cisco Sys., Inc.*, 541 F. Supp. 3d at 1018. The plaintiff in *Cisco Systems, Inc.*

26  _____

27  [2] When customers visit the www.facebeautyscience.com website, they can purchase
products bearing the Infringing Mark by selecting Skin Saint Products under the Specials

28  tab in the website header. From there, customers are automatically redirected to the
https://theskinsaint.com/ website to complete their purchase. (Kronenberger Decl. ¶10.)

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1  alleged that the defendant violated federal and California trademark laws by selling

2  infringing products in California. *Id.* The court found that the plaintiff's claims arose out of

3  the defendant's contacts with California because the claims had a causal relationship

4  with the defendant's California sales. *Id.* The court also found that the plaintiff's claims

5  related to the defendant's contacts with California because the defendant caused the

6  plaintiff's alleged injuries while attempting to serve the California market. *Id.*

7  The facts are the same here. Plaintiff has alleged that Defendants' marketing and

8  sales of products bearing the Infringing Mark in California violated federal and California

9  trademark laws. Plaintiff's claims arise out of Defendants contacts with California

10  because the claims have a causal relationship with Defendants' California sales.

11  Plaintiff's claims also relate to Defendants' contacts with California because Defendants

12  injured Plaintiff while Defendants were serving the California market. Thus, Plaintiff has

13  established a sufficient nexus between its claims and Defendants' conduct directed at

14  California.

15  **3.    Defendants have not made a compelling case that the exercise of**

16  **jurisdiction would be unreasonable.**

17  Because Plaintiff has shown that Defendants purposefully directed their conduct at

18  California, and because Plaintiff's claims arise out of Defendants' California contacts,

19  Defendants must make a "compelling case" that it would be unreasonable for the Court

20  to exercise personal jurisdiction. *Schwarzenegger*, 374 F.3d at 802. Defendants have not

21  done so, as summarized below.

22  • **Defendants' Purposeful Interjection:** Defendants purposefully interjected

23  themselves into California by marketing and selling products bearing the Infringing

24  Mark in California. *See Silk v. Bond*, 65 F.4th 445, 458 (9th Cir. 2023) ("Bond's

25  interjection into California is analogous to his purposeful availment, and,

26  accordingly, the first factor favors jurisdiction.") While Defendants allege sales in

27  California are relatively small, they are not minimal. Thus, this factor is neutral or

28  weighs in favor of jurisdiction.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

- **Burden on Defendant:** "[F]or this factor to weigh against reasonableness, the litigation must be 'so gravely difficult and inconvenient' for defendants that they would be placed at a 'severe disadvantage in comparison to [their] opponent.'" *Gutierrez v. Amplify Energy Corp.*, 634 F. Supp. 3d 780, 790 (C.D. Cal. 2022) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Moreover, the burden on the defendant must be considered in light of the corresponding burden on the plaintiff. *See In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 703 (C.D. Cal. 2022). While Defendants will no doubt be burdened by litigating this case in California, they have not presented evidence that the "inconvenience is so great as to constitute a deprivation of due process." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 608 (9th Cir. 2018). Additionally, when a defendant "does not identify any specific hardship or otherwise comment on this factor, [it] abdicat[es] its burden on this point." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1175 (9th Cir. 2006). Moreover, as the Ninth Circuit has noted, "modern advances in communications and transportation have significantly reduced the burden of litigating in another [forum]." *Id.* As such, this factor "barely" weighs against the exercise of personal jurisdiction. *See Silk*, 65 F.4th at 458.

- **Conflicts of Law:** Plaintiff has asserted claims under federal trademark law and California law. The conflict of law issue does not create a high jurisdictional barrier when the defendant is "a citizen from a sister state," because "important sovereignty concerns" do not exist. *See Gutierrez*, 634 F. Supp. 3d at 791. Moreover, courts in the Ninth Circuit are likely better-positioned to apply California law than Michigan courts, and Defendants have not identified any potential conflict in law. Thus, this factor weighs in favor of jurisdiction.

- **Forum's Interest:** Defendants argue that "California has no particular interest in adjudicating this dispute" because all "causes of action in the Complaint come down to Lanham Act Claims that could be adjudicated in any federal court. (Mot.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

at 9:25-27). Not so. "California has an interest in providing an effective means of redress for its residents." *Silk*, 65 F.4th at 459. Plaintiff is registered to conduct business in California, and it is entitled to the protections offered by the State. Moreover, one of the primary purposes of trademark law is to protect consumers who have formed particular associations with a trademark. *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873 (9th Cir. 1999). Thus, **"California has a strong interest in protecting its citizens from trademark infringement and consumer confusion." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1125 (C.D. Cal. 2009) (quoting *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000). This factor weighs in favor of jurisdiction.

- **Most Efficient Judicial Resolution:** This factor focuses on the location of the evidence and witnesses**. *See Riot Games, Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d 1102, 1119 (C.D. Cal. 2022). However, this factor is no longer weighed heavily given the modern advances in communication and transportation. *See Silk*, 65 F.4th at 459. Moreover, to demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses and describe their anticipated testimony and its relevance. *See Saperstein v. Dumont Aircraft Sales, LLC*, No. 16-CV-01926-WHO, 2016 WL 4241933, at *5 (N.D. Cal. Aug. 11, 2016). Defendants have not identified any specific witnesses or documents located in Michigan. Instead, Defendants vaguely claim that "all of Defendant's witnesses would be located in and around Michigan, as well as any relevant physical evidence . . ." (Cutler Decl. ¶17.) Thus, to the extent this factor has any weight, it is neutral.

- **Plaintiff's Interest:** Defendants argue that "Plaintiff's interest in obtaining 'effective' relief will be served equally well in any federal court across the United States, including the Eastern District of Michigan" because Plaintiff is a Nevada based company. (Mot. at 10:3-6.) Not so. Plaintiff is registered to conduct business in California. Moreover, the core business activities and trademarks of

12

Kronenberger Rosenfeld
150 Post Street, Suite 520 San Francisco, CA 94108

1   Saints & Sinners relevant to this matter are substantially based in or related to
2   California, including but not limited to: (1) its primary wholesale distributor
3   operates within California, (2) the formulation, development, and production of its
4   bestselling products occurred in California, and (3) the Saints & Sinners SS design
5   trademarks were conceived and designed in California. (Wilson Decl. ¶¶10-12.)
6   Litigating in this Court serves Plaintiff's interest in convenient and effective relief.

7   • **Existence of Alternative Forum:** "Whether another reasonable forum exists
8   becomes an issue only when the forum state is shown to be unreasonable." *Silk*,
9   65 F.4th at 459. Because Defendants have not made such a showing, this factor
10  weighs in favor of jurisdiction.

11  Considering all of the above factors, Defendants have not made a compelling
12  showing that it would be unreasonable for this Court to exercise personal jurisdiction.

13  **C.    This Court is a proper venue under 28 U.S.C. §1391.**

14  Defendants argue that this Court is an improper venue under 28 U.S.C.
15  §1391(b)(2) because the "'events' that supposedly gave rise to Plaintiff's claims occurred
16  in Michigan, not California," and Defendants "do not target businesses in California and
17  have minimum sales there." (Mot. at 11:2-6.). However, "[i]n a trademark infringement
18  action, a substantial part of the events occur both where the labels are affixed and where
19  confusion of purchasers is likely to occur." *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d
20  1178, 1184 (N.D. Cal. 2014); *see Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F. Supp.
21  1343, 1346 (D. Or. 1991). Here, Defendants operate interactive websites advertising the
22  infringing goods to California residents and they have shipped not insignificant quantities
23  of the products bearing the Infringing Mark to California residents. Thus, venue is proper
24  under 28 U.S.C. §1391(b)(2).

25  **D.    Defendants have not made a strong showing of inconvenience necessary to
26  warrant a venue transfer under 28 U.S.C. 1404(a).**

27  In the alternative to their motion to dismiss for lack of personal jurisdiction,
28  Defendants ask the Court to transfer the case to the Eastern District of Michigan. (Mot. at

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    11:16-17.) However, Defendants have not made the necessary showing of
2    inconvenience to warrant such a transfer.

3       As an initial matter, "under section 1404(a), there is significant deference given to
4    the plaintiff's choice of forum, and courts will not usually disturb this choice unless
5    transfer factors heavily favor a venue elsewhere." *Panetta v. SAP Am., Inc.*, No.
6    C0501696RMW, 2005 WL 1774327, at *5 (N.D. Cal. July 26, 2005). This is particularly
7    true where the plaintiff is a resident of the forum state. *See id.* In such circumstances,
8    "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the
9    plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,
10   843 (9th Cir. 1986). Because Plaintiff is registered to conduct business in California and
11   is therefore a resident of California, this significant deference standard applies.

12      Courts in this District commonly consider the following, non-exhaustive list of
13   factors to decide a transfer motion: (1) the plaintiff's choice of forum, (2) convenience of
14   the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5)
15   familiarity of each forum with the applicable law, (6) feasibility of consolidation of other
16   claims, (7) any local interest in the controversy, and (8) relative court congestion and time
17   to trial in each forum. *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993
18   (N.D. Cal. 2011). These factors weigh against transferring this case, as summarized
19   below:

20      • **Plaintiff's Choice of Forum**: As discussed above, courts afford "great
21   weight to the plaintiff's choice of forum, especially where the plaintiff has filed suit in a
22   district where it resides. *See Panetta,* 2005 WL 1774327 at *5. This factor weighs heavily
23   against a transfer as this is Plaintiff's chosen forum.

24      • **Convenience of the Parties**: This factor is neutral and/or insignificant as
25   Michigan would be more convenient for Defendants, while California is more convenient
26   for Plaintiff. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1045 (S.D. Cal. 2023).

27      • **Convenience of the Witnesses:** The relative convenience to the
28   witnesses is often recognized as the most important factor to be considered in ruling on a

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

motion under section 1404(a). Defendants have made no attempt to identify witnesses with any particularity. (Cutler Decl. ¶17.) Thus, this factor is neutral. *See Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020).

• **Ease of Access to Evidence:** Defendants argue that relevant physical evidence will be located in and around Michigan. (Mot. at 12:6). However, Defendants have not identified any specific physical evidence, and modern technology has rendered the location of documents "much less important to determining the convenience of the parties than it once was". *Adobe Sys. Inc. v. Bargain Software Shop, LLC*, No. C-14-3721 EMC, 2014 WL 6982515, at *2 (N.D. Cal. Dec. 8, 2014). This factor is thus neutral.

• **Familiarity with Applicable Law:** The primary claims raised in this litigation are federal trademark claims and California claims. A court in either Michigan or California will be familiar with the applicable federal law, but this Court will be more familiar with California law. As such, this factor weighs slightly in favor of Plaintiff.

• **Feasibility of Consolidation of Other Claims:** This factor is not applicable as there are no other claims to consider for consolidation.

• **Local Interest in Controversy:** As discussed above, a primary purpose of trademark law is to protect consumers. *See Avery Dennison Corp.*, 189 F.3d at 873. Thus, California courts have an interest in protecting California consumers who may be harmed by Defendants infringement. As such, this factor weighs against a transfer.

• **Relative Court Congestion/Time to Trial**: The median time from filing to disposition for cases that are disposed of during or after pretrial is 15.7 months for the Northern District of California and 15.5 months for the Eastern District of Michigan. (Kronenberger Decl. ¶11 & Ex. G.) The median disposition time for all civil cases is also similar. (Kronenberger Decl. ¶11 & Ex. G.) Thus, this factor is neutral.

Considering all of the relevant factors, Defendants have not made the strong showing of inconvenience needed to warrant a transfer under 28 U.S.C. §1404(a).

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

**CONCLUSION**

2          For all of the reasons set forth above, the Court should Deny Defendants' the

3     Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue.

4

5     Respectfully Submitted,

6     DATED: October 11, 2024                    **KRONENBERGER ROSENFELD, LLP**

7

8                                                By:   s/ Karl S. Kronenberger
                                                         Karl S. Kronenberger

9

10                                               Attorneys for Plaintiff Vicious Brands, Inc.
11                                               *dba* Saints & Sinners Haircare

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**