UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICIOUS BRANDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FACE CO., LLC, et al., <br><br> Defendants. | Case No. 24-cv-04996-LJC <br><br> **ORDER DENYING MOTION TO DISMISS OR TRANSFER** <br><br> Re: Dkt. No. 16 |

## I. INTRODUCTION

Plaintiff Vicious Brands, Inc., doing business as Saints & Sinners, brings this action against Defendants Face Co., LLC, Skin Saint, LLC, and Holly Cutler, alleging that Defendants infringed Plaintiff's trademark and fraudulently applied for a similar trademark. Defendants move to dismiss the case for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the case to the Eastern District of Michigan. The Court previously found the matter suitable for resolution without oral argument and vacated the hearing that had been set for November 12, 2024. For the reasons discussed below, Defendants' Motion is DENIED.[1]

## II. BACKGROUND

### A. Allegations of the Complaint

For convenience, this section summarizes Plaintiff's allegations as if true. Nothing in this summary should be construed as resolving any issue of fact that might be disputed.

Plaintiff is a Nevada corporation based in Reno that has developed and sold hair care products nationwide since Plaintiff's founding in 2016, using the trade name Saints & Sinners and a logo featuring two instances of the letter S conjoined horizontally, for which it holds multiple

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

1    registered trademarks. Compl. (ECF No. 1) ¶¶ 2, 20–22, 25.

2        Defendants Skin Saint and Face Co. are Michigan limited liability companies that sell
3    beauty products and consultation services under the trade name Skin Saint, using a logo featuring
4    two instances of the letter S conjoined vertically. *Id.* ¶¶ 12–13, 34. Skin Saint owns and operates
5    a website for the sale of such products, which Plaintiff claims is confusingly similar to Plaintiff's
6    Saints & Sinners website. *Id.* ¶¶ 12, 47. Face Co. owns and operates a brick-and-mortar store,
7    and previously owned and operated the Skin Saint website. *Id.* ¶ 13. Defendant Cutler is the
8    founder and owner of both Skin Saint and Face Co., and Plaintiff alleges that she is personally
9    responsible for the conduct at issue. *Id.* ¶ 11.

10       Face Co. applied to register a trademark for its double-S mark in 2022, and later assigned
11   its rights to that mark and application to Cutler. *Id.* ¶¶ 36, 39. Plaintiff has filed a notice of
12   opposition to that application with the Trademark Trial and Appeal Board. *Id.* ¶ 52.[2]

13       Plaintiff sent Defendants a cease-and-desist letter asserting infringement, but Defendants
14   have refused to cease using their double-S mark. *Id.* ¶¶ 49–50.

15       Plaintiff asserts the following claims: (1) trademark infringement in violation of 15 U.S.C.
16   § 1114, Compl. ¶¶ 61–74; (2) unfair competition and false designation of origin in violation of 15
17   U.S.C. § 1125(a), Compl. ¶¶ 75–88; (3) fraudulent procurement of a trademark in violation of 15
18   U.S.C. § 1064(3), Compl. ¶¶ 89–101; (4) unfair competition in violation of section 17200 of the
19   California Business and Professions Code, Compl. ¶¶ 102–08; (5) common law trademark
20   infringement, *id.* ¶¶ 109–20; and (6) common law unfair competition, *id.* ¶¶ 121–31.

21       **B.    Evidentiary Record**

22       Cutler asserts in a declaration that Defendants "are located in Bingham Falls, Michigan,"
23   "have no connection to California," and "have never had any presence in California whatsoever."
24   ECF No. 16-1 (Cutler Decl.) ¶¶ 2, 4, 5. Defendants' only physical location is in Bingham Falls.
25   *Id.* ¶ 13. Defendants do not own or lease offices or retail location in California, and "have never

---

[2] Defendants assert in their present Motion that Plaintiff has moved to stay the opposition proceedings pending resolution of this litigation, and that Defendants oppose that request. ECF No. 16 at 9.

1    targeted California specifically for marketing or advertising purposes." *Id.* ¶¶ 6, 11. According to
2    Cutler, Defendants have made eighty-nine sales to customers in California for products using the
3    allegedly infringing double-S mark since they began using that mark in 2021, totaling $12,336.40.
4    *Id.* ¶ 10. Cutler characterizes those sales (as wells as other sales to California that do not use the
5    mark at issue) as "a minimal portion of Defendants' total sales," although she does not quantify
6    them as a percentage of total sales. *Id.* ¶ 6; *see id.* ¶ 9. Cutler states that Defendants have no plans
7    to expand to California or to target the California market, and that they were not aware of Plaintiff
8    until Plaintiff filed its opposition to Defendants' trademark application. *Id.* ¶¶ 12, 15.

    According to Cutler, "all of Defendant's [sic] witnesses would be located in and around
10   Michigan, as well as any physical evidence," and litigating in California would be burdensome.
11   *Id.* ¶¶ 16–17.

12   Plaintiff's co-founder and chief creative officer Diana Wilson asserts that although
13   Plaintiff is a Nevada corporation, it is registered to conduct business in California and its "core
14   business activities and trademarks . . . relevant to the matter are substantially based in or related to
15   California." ECF No. 21-2 (Wilson Decl.) ¶¶ 2, 3, 9. According to Wilson, Plaintiff's "primary
16   wholesale distributor operates within California," "[t]he formulation, development, and production
17   of three of [its] bestselling products occurred in California," and its relevant "design trademarks
18   were conceived and designed in California." *Id.* ¶¶ 10–12. Wilson also states that Plaintiff
19   "conducts more trainings and seminars in California than all of the other states combined," that
20   most of the "session stylists working with the brand are located in California," and that Plaintiff
21   frequently sponsors high-profile events in California. *Id.* ¶¶ 13–15.

22   Plaintiff's counsel Karl Kronenberger submits a declaration attaching various documents
23   related to the merits of Plaintiff's claims, most of which are not offered to show any connection to
24   California and thus are not particularly relevant to the present Motion. *See generally* ECF No.
25   21-1 (Kronenberger Decl.). Kronenberger asserts that his office purchased products from
26   Defendants' website for delivery in California and received those products in March of this year.
27   *Id.* ¶ 10. He also attaches statistics showing the time to disposition of cases in various district
28

3

1   courts. *Id.* ¶ 11 & Ex. G, pp. 57–60.[3]

### C. The Parties' Arguments

#### 1. Personal Jurisdiction

Defendants argue that they are not subject to personal jurisdiction in this Court because "they have never purposefully availed themselves of California law." ECF No. 16 at 10. They contend that Plaintiff's allegations of Defendants marketing their products to California customers are conclusory and inaccurate, *id.* at 11–12, and that the Ninth Circuit has held mere operation of a "passive website" insufficient to establish personal jurisdiction, *id.* at 12 (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). Defendants argue that their sales to California (around twenty-two per year) are too minimal to establish jurisdiction, and that there is no other connection between their Michigan-based business and California. *Id.* at 12–13. In Defendants' view, the Court need not consider whether Plaintiff's claims arise out of their contacts with California when those contacts are minimal. *Id.* at 13. Defendants also argue that the Court need not consider the reasonableness of exercising jurisdiction, but they contend that if the Court reaches that question, it would be unreasonable to subject them to jurisdiction in California. *Id.* at 14–15.

Plaintiff contends that the relevant test for personal jurisdiction in this case is purposeful direction rather than purposeful availment, and that Defendants' sales of allegedly infringing products to customers in California are sufficient to meet that test even if they only make up a relatively small portion of Defendants' overall sales. ECF No. 21 at 12–15. Plaintiff relies heavily on a *Cisco Systems, Inc. v. Dexon Computer, Inc.*, 541 F. Supp. 3d 1009 (N.D. Cal. 2021), which found an out-of-state defendant subject to personal jurisdiction based in large part on its sales in the state and rejected an argument that the small percentage of such sales negated jurisdiction. *See id.* Plaintiff also argues that Defendants have not met their burden to "make a 'compelling case' that it would be unreasonable for the Court to exercise personal jurisdiction." *Id.* at 15 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004));

---

[3] Citations herein to page numbers of documents filed in the docket of the case refer to the page numbers assigned by the Court's ECF filing system.

*see also id.* at 15–18 (addressing factors that courts have held relevant to that inquiry).

Defendants argue in their Reply that *Cisco* is distinguishable, primarily because it involved allegations of counterfeiting that are not present here. ECF No. 22 at 3–5. They also note that Plaintiff's allegations relate in part to Defendants' marketing (not only their sales), and argue that Plaintiff has not shown any particular connection between Defendants' marketing activities and California. *Id.* at 4–5. Finally, Defendants address several cases that Plaintiff cited in the context of reasonable of jurisdiction or convenience of a venue, and argue that they are distinguishable on their facts. *Id.* at 5–7.

### 2.  Venue

Defendants argue that venue is not proper in this Court under 28 U.S.C. § 1391(b)(2), which allows for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," because "the 'events' that supposedly gave rise to Plaintiff's claims occurred in Michigan, not California." ECF No. 16 at 15–16. Plaintiff responds that courts have treated the location "where confusion of purchasers is likely to occur" as a proper venue for trademark cases. ECF No. 21 at 18.

Defendants contend—and Plaintiff does not dispute—that venue cannot be established under the alternative tests of subparts (b)(2) and (b)(3) of the statute, because Defendants are residents of Michigan and this case could properly have been brought in a district court in that state. ECF No. 16 at 16; *see* ECF No. 21 at 18.

### 3.  Discretionary Transfer

Finally, Defendants briefly argue that if the Court does not dismiss the case, the Court should transfer the case to the Eastern District of Michigan under 28 U.S.C. § 1404(a) because litigating the case in this district would be burdensome for Defendants and all of Defendants' witnesses and evidence are located in Michigan. ECF No. 16 at 16–17.

Plaintiff argues that its choice of forum is entitled to deference, the relative convenience and inconvenience of each party's preferred forum offset each other, Defendants have not identified any witnesses or evidence with particularity, this Court has greater familiarity with Plaintiff's claims under California law (and equal familiarity with the federal claims), and

1  California courts have an interest in protecting California consumers.  ECF No. 21 at 19–20.

2  Plaintiff contends that the relative court congestion and time to trial in this district and the Eastern

3  District of Michigan are relatively even, and that the factor addressing potential consolidation with

4  other claims is inapplicable.  *Id.* at 20.

**III.  ANALYSIS**

    **A.  Motion to Dismiss for Lack of Personal Jurisdiction**

        **1.  Legal Standard**

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.  Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004) (citations omitted).  Due process requires that a nonresident defendant "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either general or specific.  General jurisdiction applies where a defendant is "essentially at home in the forum State," such that the defendant can be sued in the that state's courts regardless of any connection between the state and the claims at issue. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted).  Plaintiff does not assert that Defendants are subject to general personal jurisdiction in California.

Specific jurisdiction turns on the connection between the claims at issue and the forum state, and can be based either on a defendant's purposeful availment of the forum state's law (the test typically applied in contract cases) or on a defendant's purposeful direction of conduct to the forum state (the test typically applied in tort cases). *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021).  Under either test, a plaintiff must also show that the claims at issue "arise out of or result from" the defendant's "forum-related activities," and that the exercise of jurisdiction is reasonable.  *Id.* (citation omitted).  The plaintiff bears the burden of establishing forum-related conduct and that the claims arise from such conduct.  *Id.*  If the plaintiff meets that

burden, the defendant must present a "compelling case" that exercising jurisdiction would be unreasonable.

"Personal jurisdiction must exist for each claim asserted against a defendant," but "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

"Where, as here, the motion [to dismiss] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts" through "pleadings and affidavits," and "conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (cleaned up). Courts consider "the facts in totality and in the light most favorable to plaintiff." *Ayla*, 11 F.4th at 983.

### 2. Defendants Purposefully Directed Sales to California

"Trademark infringement is treated as tort-like for personal jurisdiction purposes," thus implicating the purposeful direction test. *Ayla*, 11 F.4th at 979. "[A] defendant purposefully directs its activities toward the forum when the defendant has '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 980 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)). Mere knowledge of a *plaintiff's* ties to the forum are not sufficient to show purposeful direction; instead, a defendant must have engaged in "conduct directly targeting the forum." *Id.* (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)).

The parties dispute whether Defendants' sales in California are sufficient to establish jurisdiction. "[D]istribution in the forum state of goods originating elsewhere" is an archetypal example of purposeful direction. *Schwarzenegger*, 374 F.3d at at 803 (citing Supreme Court and Ninth Circuit authority). Defendants argue, however, that their 89 sales to California customers are too minimal to support jurisdiction here. ECF No. 16 at 12–13.

7

Plaintiff relies heavily on Judge Breyer's decision in *Cisco Systems, Inc. v. Dexon Computer, Inc.*, 541 F. Supp. 3d 1009 (N.D. Cal. 2021). *See* ECF No. 21 at 12–15. In that case, the plaintiff (Cisco) alleged that the defendant (Dexon) infringed Cisco's trademark by selling counterfeit Cisco products to customers throughout the United States, including to an investigator and other customers in California, and that Dexon purchased at least some of those counterfeit products from a California company. *Cisco*, 541 F. Supp. 3d at 1013. Cisco identified "at least 18" sales by Dexon to California, which included at least 40 allegedly counterfeit products and 20 allegedly counterfeit software licenses. *Id.* Judge Breyer held that Dexon's alleged sales to California customers established purposeful direction:

> As discussed above, Cisco alleges that Dexon sold counterfeit Cisco products to a Cisco investigator in Berkeley, California in 2017 and sold at least 40 counterfeit Cisco products and 20 counterfeit Cisco software licenses to customers in California from 2017 to 2020. Thus, Cisco alleges that Dexon engaged in "intentional act[s]" by intentionally selling these products; that those acts were "expressly aimed" at California because Dexon sold the products directly to California customers; and that the acts caused harm that Dexon knew was "likely to be suffered" in California because the sale of counterfeit products in California would plainly harm Cisco's business interests there. Schwarzenegger, 374 F.3d at 803. By intentionally "exploiting" the California market, Dexon purposefully directed its conduct at California. Ford Motor Co. [v. Mont. Eighth Judicial Dis. Ct., 141 S. Ct. 1017, 1025 (2021)].

*Id.* at 1016–17.

Judge Breyer rejected Dexon's argument that its small portion of sales to California ("1/8 of 1%") precluded a finding of purposeful direction. *Id.* at 1017. He noted that "Dexon's knowledge of Cisco's presence in California could not give rise to jurisdiction" in itself, but explained that his finding of jurisdiction was "based on Dexon's direct relationship with California [through its sales], not Cisco's presence there." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014)). Judge Breyer did not reach the question of whether Dexon's purchases of products from California could support purposeful direction. *Id.*

Judge Breyer concluded that Cisco had shown a sufficient nexus between the forum-related conduct and its "claims against Dexon for selling counterfeit Cisco products in various states including California," and that "Dexon has failed to carry its burden of presenting a compelling

8

1  case that exercising jurisdiction over Dexon would be unreasonable" when Dexon "routinely
2  conducts business in California." *Id.* at 1018. He also noted that "while some witnesses and
3  pieces of evidence are likely located in [Dexon's home state of] Minnesota, others (including
4  customers who allegedly purchased counterfeit products from Dexon, along with the allegedly
5  counterfeit products) are likely located in California." *Id.* at 1018–19.

6        At least one other district court decision not cited by the parties has followed *Cisco*, under
7  the somewhat analogous circumstances of a defendant using an expert witness report that
8  allegedly infringed the plaintiff's copyright in one arbitration proceeding in California and several
9  other proceedings elsewhere.[4] *Woolfson v. Conn Appliances, Inc.*, No. 21-cv-07833-MMC, 2022
10 WL 3139522, at *3–4 (N.D. Cal. Aug. 5, 2022). Judge Chesney held that the one-time use of the
11 report in California was sufficient to show purposeful direction, notwithstanding the fact that the
12 same report had been used in other states. *Id.* at *4.

13       More importantly, though—and not addressed by the parties[5]—the Ninth Circuit has
14 adopted substantially the same formulation of the rule regarding sales to a forum state in a
15 precedential opinion: *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021). That case
16 involved trademark infringement and related claims. *Id.* at 976–77. The plaintiff asserted
17 nationwide jurisdiction under Rule 4(k)(2), so the court addressed the relationship of the defendant
18 and the claims to the United States as a whole, rather than to a particular state. *Id.* at 978–79.
19 Less than ten percent of the foreign defendants' sales were to the United States. *Id.* at 977. The
20 court addressed those sales as follows:

21         With respect to Alya Skin's volume of sales in the United States,
22         *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), is instructive.
        In *Keeton*, the Supreme Court upheld the exercise of jurisdiction in
        New Hampshire over a nonresident magazine publisher defendant. *Id.*
23         at 772–75. The Court reasoned that although the magazine publisher
24         had a nationwide audience and had not targeted the forum

---

[4] The plaintiff, who had previously served as an expert witness in Telephone Consumer Protection Act litigation on behalf of the defendant, alleged that the defendant continued using versions of his report in new cases after it ceased paying him for his services. *Woolfson v. Conn Appliances, Inc.*, No. 21-cv-07833-MMC, 2022 WL 3139522, at *1 (N.D. Cal. Aug. 5, 2022).
[5] Plaintiff cites *Ayla* for the general principle that trademark claims implicate the purposeful direction test, but neglects to mention its holding regarding small percentages of sales. ECF No. 21 at 12. Defendants do not address it at all. *See generally* ECF Nos. 16, 22.

> particularly, it should reasonably anticipate an action "wherever a substantial number of copies are regularly sold and distributed." *Id.* at 781.
>
> Alya Skin's substantial sales to American consumers are similar to the significant volume of sales in *Keeton*. Nearly ten percent of Alya Skin's products are sold in and shipped to the United States. By this percentage-of-sales measure—the only metric in the record before us—Alya Skin's sales to the forum are considerably more regular and significant than those in *Keeton*. Compare *Keeton v. Hustler Mag., Inc.*, 682 F.2d 33, 33 (1st Cir. 1982) ("[Defendant's] circulation in New Hampshire amounts to less than one percent of their total circulation in the United States."), *rev'd and remanded*, 465 U.S. 770 (1984), *with* ("Alya Skin offers to ship its products worldwide but less than 10% of its sales have been to the United States."). As *Keeton* demonstrates, there is no "small percentage of sales" exception to the purposeful direction principles discussed herein. Alya Skin's sales to the forum are no less substantial simply because the company sold more products elsewhere. Alya Skin's argument that its United States sales are "*de minimis*" and preclude the exercise of jurisdiction therefore fails.
>
> To be sure, Alya Skin's contacts with the United States would be insufficient if they were "random, isolated, or fortuitous." *Keeton*, 465 U.S. at 774. But Alya Skin has done more than merely place its products into the stream of commerce, running the risk that its products might randomly or serendipitously arrive in the United States. *See Holland Am. Line* [*Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459–60 (9th Cir. 2007)] (contrasting "mere placement of a product into a stream of commerce" and "sell[ing] . . . products directly into the United States"). Alya Skin offers its products directly for sale to the United States on its website. Though some of its sales to the United States may have occurred through third-party websites, like Instagram and Facebook, Alya Skin operates those social media accounts. Further, Alya Skin is not a parts manufacturer with no control over the ultimate distribution of its products. *See Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112–13 (1987) (plurality) (finding no jurisdiction where a parts manufacturer "did not create, control, or employ the distribution system that brought its valves to California"). To the contrary, Alya Skin determines how and whether its orders are fulfilled.

*Id.* at 981–82 (parallel reporter citations omitted).

Other factors also supported jurisdiction in *Ayla*, like the defendant's deliberate marketing to customers in the United States (e.g., an Instagram post beginning with the phrase "ATTENTION USA BABES"), its contract with an Idaho fulfillment center, and FDA approval for its skincare products. *Id.* at 980–82. In *Keeton*, however, the Supreme Court rested its finding of jurisdiction almost entirely on the defendant's circulation of newspapers in the forum state. 465 U.S. at 774. The Court addressed other factors that, in the view of the circuit court below, had

10

1  negated jurisdiction, like an unusually long statute of limitations and the plaintiff's limited contact
2  with the state, but did not identify any conduct by the defendant supporting jurisdiction besides the
3  in-state sales. *See id.* at 775–80. Although *Keeton* concerned libel claims rather than trademark
4  infringement, the Ninth Circuit adopted its reasoning in the context of trademark claims in *Ayla*.
5  Judge Breyer also relied entirely on the defendant's California sales in *Cisco*, expressly declining
6  to address the significance of the defendant's purchases in California, and Judge Chesney relied
7  solely on a single in-state use of the allegedly infringing report in *Woolfson*. *Cisco*, 541 F. Supp.
8  3d at 1017; *Woolfson*, 2022 WL 3139522, at *3–4,

9      Defendants seek to distinguish Judge Breyer's decision in *Cisco* on the basis that it
10  involved counterfeit goods, but their Reply fails to explain why that distinction is significant. *See*
11  ECF No. 22 at 3–4. That case did not identify the distinction between counterfeiting and other
12  forms of trademark infringement as relevant to its analysis of personal jurisdiction. *See Cisco*, 541
13  F. Supp. 3d at 1016–19. Even if *Cisco* had tacitly considered that distinction to be important, the
14  Ninth Circuit's precedential decision in *Ayla* involved allegations (like here) of a confusingly
15  similar mark, not counterfeit products. 11 F.4th at 977.

16      The fact remains that Defendants repeatedly sold allegedly infringing goods in California,
17  including after they were put on notice (at least through Plaintiff's opposition filing in the
18  administrative trademark proceeding) that Plaintiff believed Defendants' mark infringed Plaintiffs'
19  trademark rights. *See* ECF No. 21-1 (Kronenberger Decl.) ¶¶ 6, 10 (noting the opposition filing in
20  January of 2024 and a test purchase in California in March of 2024). Courts have long recognized
21  "distribution in the forum state of goods originating elsewhere" as a form of purposeful direction,
22  *Schwarzenegger*, 374 F.3d at 803, and the Ninth Circuit has made clear that "there is no 'small
23  percentage of sales' exception" to that principle, *Ayla*, 11 F.4th at 981. Defendants do not claim
24  that their eighty-nine sales to California were somehow accidental, and offer no basis to conclude
25  that those sales were "random, isolated, or fortuitous"—a standard exemplified by a "a parts
26  manufacturer with no control over the ultimate distribution of its products" once they are
27  incorporated into consumer goods. *Id.* at 981–82 (quoting *Keeton*, 465 U.S. at 774, and citing
28  *Asahi*, 480 U.S. at 112–13). And Defendants cite no case in which a court found a lack of

11

1    purposeful direction (or, for that matter, personal jurisdiction) based on a defendant's direct sales
2    to the forum state, whether in the context of trademark infringement or any other legal theory.
3    　　　　Defendants "(1) committed an intentional act, (2) expressly aimed at the forum state" when
4    they sold products to California on eighty-nine occasions over the last few years. *See Ayla*, 11
5    F.4th at 980.
6    　　　　At least after Plaintiffs put Defendants on notice of their infringement theory, Defendants
7    could also reasonably expect that—if Plaintiff is correct that those products infringe its mark—
8    those sales could harm Plaintiff's sales in California and cause confusion among California
9    customers, thus meeting the third element of the test for purposeful direction. *See id.* ("(3) causing
10   harm that the defendant knows is likely to be suffered in the forum state."). *Id.* at 980; *see Keeton*,
11   465 U.S. at 772, 774 (agreeing with the district court's conclusion that the Defendants' circulation
12   of magazines in New Hampshire "inevitably affected persons in the state," and finding personal
13   jurisdiction where the plaintiff lived elsewhere but conducted some degree of business in New
14   Hampshire).  The Court is aware of no authority construing the "harm that the defendant knows is
15   likely to be suffered in the forum" element of the purposeful direction test as requiring proof on
16   the merits that a defendant's conduct was knowingly wrongful.  In *Keeton*, for example, the Court
17   did not address whether the statements at issue were actually defamatory.  On the procedural
18   posture of this motion, this Court must "[v]iew[] the facts in totality and in the light most
19   favorable to plaintiff," and "the plaintiff need only make a prima facie showing of jurisdictional
20   facts." *Ayla*, 11 F.4th at 978, 983 (quoting and citing *Schwarzenegger*, 374 F.3d at 800).
21   　　　　The Court therefore concludes that Defendants purposefully directed their conduct to
22   California for the purpose of assessing specific personal jurisdiction.
23   　　　　　　　**3.　　　Plaintiff's Claims Arise from Defendant's Forum-Related Conduct**
24   　　　　Having concluded that Defendants' sales in California constitute purposeful direction, it is
25   no great leap to find a sufficient nexus between those sales and Plaintiff's trademark infringement
26   claims and related claims for unfair competition.[6]  Defendants' Motion barely addresses this

---

[6] Defendants have not argued that Plaintiff's claim for fraudulent procurement of a trademark warrants separate analysis from Plaintiff's other claims for trademark infringement and unfair

element of the test beyond asserting that the Court need not reach it. ECF No. 16 at 13. As far as this Court is aware, courts have uniformly found that claims for infringement of intellectual property "arise out of or result from" sales or use of allegedly infringing products in the forum state, even where a defendant has sold or used the product more often in other states, and generally without need for extensive analysis. *E.g.*, *Ayla*, 11 F.4th at 983; *Cisco*, 541 F. Supp. 3d at 1018; *Woolfson*, 2022 WL 3139522, at *4.

"[I]f a company attempts to directly serve the market for its product in the forum state, and its product causes an injury in the forum state, that is enough." *Cisco*, 541 F. Supp. 3d at 1016 (citing *Ford Motor Co.*, 141 S. Ct. at 1027). Although the record indicates that Defendants did not *focus* their business on sales to California, they have shipped nearly one hundred orders of their allegedly infringing products to California. The Court finds Plaintiff's claims sufficiently connected to those sales to support personal jurisdiction.

### 4. Defendants Have Not Established that Jurisdiction Is Unreasonable

Because Plaintiff has met its burden to show purposeful direction and a nexus to its claims, "the burden shifts to [Defendants] to present a 'compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Ayla*, 11 F.4th at 983–84. Courts consider several factors in that inquiry:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* at 984 (quoting *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)). "When minimum contacts have been established, often the interests of the plaintiff and

---

competition. That claim is based primarily on Defendants' allegedly inaccurate statements of when they began using their double-S mark and the types of products for which they used it. Compl. ¶¶ 91–96. Plaintiffs have not alleged those statements occurred in California, but the fraudulent procurement claim implicates some common issues of fact with the infringement claims, including Defendants' history of using their mark in California and elsewhere. In the absence of any arguments specific to that claim, the Court finds that it falls at least within pendent personal jurisdiction based on its relationship to the infringement claims. *See Action Embroidery*, 368 F.3d at 1180.

1  the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien

2  defendant." *Id.* (quoting *Asahi Metal*, 480 U.S. at 114, and finding the exercise of jurisdiction

3  based on a foreign corporations sales to the United States reasonable).

4        Defendants cite no case finding jurisdiction constitutionally unreasonable in a case where a

5  defendant sold products in the forum state—or, for that matter, on any other fact pattern.

6  Defendants rely solely on the Supreme Court's discussion of relevant factors in *Burger King Corp.*

7  *v. Rudzewicz*, 471 U.S. 462 (1985), a case where the Court found an exercise of personal

8  jurisdiction reasonable based on the defendant's contractual relationship with the in-forum

9  plaintiff. *See* ECF No. 16 at 14–15; *see generally* ECF No. 22 (Defendants' Reply, citing no case

10  where a court found the exercise of jurisdiction unreasonable).

11        As discussed above, sales in a forum state are a well-established basis for exercising

12  personal jurisdiction over a non-resident defendant. The Michigan-based Defendants would face

13  some burden litigating in California, but when they have not articulated any manner in which this

14  case would be more burdensome than for a typical non-resident defendant, nor identified any

15  witnesses who would need to travel to California besides Defendant Cutler, they "have not

16  presented evidence that the inconvenience is so great as to constitute a deprivation of due

17  process." *Freestream Aircraft*, 905 F.3d at 608 (cleaned up). Defendants have identified no

18  conflict of sovereignty, and California has at least some interest in enforcing unfair competition

19  laws intended to protect its consumers and a competing business that does substantial business in

20  this state. *See Ayla*, 11 F.4th at 984 ("The United States also has a clear interest in protecting its

21  consumers from confusion and providing redress for violations of its trademark laws.").

22        There are undoubtedly other courts where Plaintiff could have brought these or similar

23  claims, and there may be some efficiency gains to litigating in Michigan (while also tradeoffs with

24  somewhat greater burden on Plaintiff), but "whether another reasonable forum exists becomes an

25  issue only when the forum state is shown to be unreasonable." *Id.* (cleaned up). Defendants have

26  not met their heavy burden to show that proceeding in this district would "make litigation 'so

27  gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison

28  to his opponent." *Burger King*, 471 U.S. at 478 (quoting *Bremen v. Zapata Off-Shore Co.*, 407

1 U.S. 1, 18 (1972)).

2                                            * * *

For the reasons discussed above, Defendants' Motion is DENIED to the extent that it seeks dismissal for lack of personal jurisdiction.

### B.     Motion to Dismiss for Improper Venue

Under the general federal venue statute, a "civil action may be brought in"

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Courts considering motions to dismiss for improper venue must resolve factual disputes and draw reasonable inferences in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138–39 (9th Cir. 2004).

Not all Defendants reside in the state of California,[7] and Plaintiff does not claim that the fallback provision of subpart (3) applies here. Venue is therefore proper, if at all, under subpart (2), based on a substantial part of the events at issue occurring in this district.

"In a trademark infringement action, a substantial part of the events occur both where the labels are affixed and where confusion of purchasers is likely to occur," with the latter location being "where the deceived customer buys the defendant's product." *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014) (citation omitted). "[V]enue is proper wherever consumers are likely to be to be confused, 'whether that occurs solely in one district or in many.'" *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, No. CV-19-05216-PHX-MTL,

---

[7] As entities other than natural persons, Face Co. and Skin Saint are deemed for this purpose to "reside" anywhere they are subject to personal jurisdiction, 28 U.S.C. § 1391(c)(2), and therefore reside in California based on the jurisdictional analysis above. Cutler, however, resides only in Michigan. *Id.* § 1391(c)(1); ECF No. 16-1, ¶ 2. Plaintiff has not asserted that venue is proper under § 1391(b)(1).

15

2020 WL 3893563, at *7 (D. Ariz. July 10, 2020) (quoting *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009)); *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).

Courts have generally held that a defendant's mere operation of a passive website that is viewable in a given district is not sufficient to establish venue. *Kaia Foods*, 70 F. Supp. 3d at 1186–87; *Dakota Beef, LLC v. Pigors*, 445 F. Supp. 2d 917, 920 (N.D. Ill. 2006); *Jamba Juice Co. v. Jamba Grp.*, Inc., No. C-01-4846 VRW, 2002 WL 1034040, at *3 (N.D. Cal. May 15, 2002); *but see Adobe Sys. Inc. v. Childers*, No. 5:10-cv-03571 JF/HRL, 2011 WL 566812, at *8 (N.D. Cal. Feb. 14, 2011) (finding venue proper based on "highly interactive website," among other contacts). Here, though, Plaintiff's claims are based on Defendants' sales, not merely their website.

Defendants characterize *Kaia Foods* as granting a motion to transfer based on improper venue because "a small number of sales of goods was insufficient," ECF No. 22 at 5, but that case actually involved *no* sales to the forum district. *Kaia Foods*, 70 F. Supp. 3d at 1186 ("[T]here is no evidence that any orders have ever been placed by purchasers in this district. To the contrary, the only evidence is that no orders have been placed with Defendant from this district—whether via the website or through any other means."); *see also, e.g.*, *Dakota Beef*, 445 F. Supp. 2d at 920–21 ("No orders were ever shipped to Illinois."). To the contrary, the court in *Kaia Foods* acknowledged that courts have found venue to be proper when a defendant "operated a website advertising its products that was accessible in the Northern District *and* made 'relatively modest sales' in this district." 70 F. Supp. 3d at 1184 (citing *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599, at *4 n. 2 (N.D. Cal. Mar. 23, 2005)) (emphasis added); *see also Adobe*, 2011 WL 566812, at *8 n.5 ("However, a website coupled with even a small number of sales in the district can support a finding that venue is proper.").

As discussed above, Defendants offer evidence that they have made eighty-nine sales of allegedly infringing products to the state of California. ECF No. 16-1, ¶ 10. Both parties focus their arguments on whether those sales to this *state* are sufficient, without addressing sales to this district specifically. ECF No. 16 (Mot.) at 16 (asserting that "Defendants do not target business in

1    California and have minimum sales there"); ECF No. 21 (Opp'n) at 18 (asserting that Defendants
2    "shipped not insignificant quantities of the products . . . to California residents").  At least one of
3    Defendants' sales was shipped to this district: the test purchase to Plaintiff's counsel's San
4    Francisco office.  ECF No. 21-1, ¶ 10.  Courts place reduced weight on "sales orchestrated by the
5    plaintiff," *BBK Tobacco*, 2020 WL 3893563, at *7 at n.6, but this Court finds that sale, coupled
6    with Defendants' not-insignificant number of sales to the state as a whole—and the lack of
7    evidence or argument that such sales excluded this district—sufficient to support a reasonable
8    inference that Defendants have made at least some sales to this district that were not orchestrated
9    by Plaintiff.

10   Because at least some of Defendants' allegedly infringing sales appear to have occurred in this district, Defendants' Motion is DENIED to the extent that it seeks dismissal for improper venue.

### C.  Motion to Transfer Venue

Even where venue is proper and personal jurisdiction has been established, a district court may transfer a case to "any other district or division where it might have been brought" based on "the convenience of parties and witnesses" and "the interests of justice."  28 U.S.C. § 1404(a).  If jurisdiction and venue would be proper in the district to which transfer is proposed—which Plaintiff does not dispute here—then the Court must "balance[e] 'the plaintiff's interest to freely choose a litigation forum against the aggregate considerations of convenience of the defendants and witnesses and the interests of justice,'" based on factors that include:

> (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

*Molina Healthcare, Inc. v. Celgene Corp.*, No. 21-cv-05483-JCS, 2022 WL 161894, at *5 (N.D. Cal. Jan. 18, 2022) (quoting *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. 03-3711 (MHP), 2003 WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003); *Royal Queentex Enters. Inc. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *2 (N.D. Cal. Mar. 1, 2000)); *see also*

17

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

The weight to be afforded to those or other factors is "left to the discretion of the trial judge." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (citation omitted). Transfer is not appropriate, however, when it "would merely shift rather than eliminate the inconvenience." *Decker Coal*, 805 F.2d at 843.

Generally, a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Id.*[8] The deference afforded to that choice depends on the contacts with the forum, and a "plaintiff's choice of forum is entitled to less deference . . . when the plaintiff elects to pursue a case outside its home forum." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009); *see Hendricks v. StarKist Co.*, No. 13-cv-729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014). Here, Plaintiff cites no authority for its assertion that it is "a resident of California" by virtue of its registration to conduct business here, notwithstanding the fact that it is incorporated and physically located in Nevada. *See* ECF No. 21 at 19; Compl. ¶ 10. The fact remains, however, that Plaintiff conducts a significant portion of business in California, ECF No. 21-2, ¶¶ 3, 9–15, and Plaintiff's headquarters in Reno is much closer to this district than to the Eastern District of Michigan. The Court therefore affords meaningful deference to Plaintiff's choice of forum.

On the other side of the scale, Defendants assert that they are located in Michigan and would face a "tremendous burden" litigating in California when "all of Defendant's witnesses would be located in and around Michigan, as well as any relevant physical evidence." ECF No. 16-1, ¶¶ 16–17; *see also* ECF No. 16 at 16–17.

Courts have rejected similarly conclusory assertions regarding convenience of parties and witnesses:

> In support of their motion, defendants rely exclusively on the conclusory declaration of Richard Ticktin. Ticktin states that "[t]he majority of the potential witnesses for the Defendants are located in Florida," Ticktin Decl. ¶ 6, and avers that "[i]t would cause a great

---

[8] Defendants assert in their Reply that Plaintiff's opposition to transferring the case is "readily diagnosed as plaintiff narcissism." ECF No. 22 at 3. That assertion is not helpful, and elides the substantial deference typically shown to a plaintiff's choice of forum.

> expense and would be unduly burdensome for . . . Defendants, and all of the employees and witnesses of the Defendants to travel . . . [to] California," *id.* ¶ 11. Such vague and conclusory assertions concerning the convenience of witnesses, which "is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)," *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F.Supp.2d 1141, 1147 (C.D. Cal. 2009), do not suffice. Indeed, absent information regarding "not only the number of witnesses, but also the nature and quality of their testimony," *id.* (quoting *Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799, at *3 (C.D. Cal. Feb.27, 2006)), the Court cannot engage in the requisite balancing analysis, let alone conclude that this analysis merits transfer.

*Abundancia, LLC V. R.D.T. Bus. Enters., Inc.*, No. 2:15-cv-00755-CAS, 2015 WL 3533213, at *4 (C.D. Cal. June 3, 2015).

Defendants' contentions here are materially indistinguishable from those the court found insufficient in *Abundancia*. They do not identify any specific witnesses or explain the nature of their testimony. Although it is certainly possible that other relevant witnesses might be present in Michigan, the only such witness apparent from the current record is Defendant Holly Cutler.

"The convenience of non-party witnesses is a more important factor than the convenience of party witnesses," because party witnesses can be compelled to testify regardless of their location. *Hendricks*, 2014 WL 1245880, at *3 (quoting *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009)). Neither party here has identified any likely non-party witnesses, although it is possible that purchasers of Defendants' products in California might be called as witnesses to support Plaintiff's claims under California law.

On the record before the Court, Defendants' conclusory assertions of burden are not sufficient to disturb Plaintiff's choice of forum. To the extent Defendants have articulated any burden, transfer would "merely shift rather than eliminate the inconvenience," which is not sufficient to grant a motion under § 1404(a). *Decker Coal*, 805 F.2d at 843. As discussed above in the context of personal jurisdiction, California also has some interest in applying its trademark and unfair competition laws to sales occurring in this state. Other factors, like the relative congestion of dockets, are generally neutral here and carry little weight. *See* ECF No. 21-1 at 57–60 (table of statistics showing similar median times to disposition of cases in this district and the Eastern District of Michigan).

Defendants' Motion is therefore DENIED to the extent that it seeks a discretionary transfer

to the Eastern District of Michigan.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion is DENIED.

**IT IS SO ORDERED.**

Dated: November 12, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge