1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6
7    VICIOUS BRANDS, INC.,                    Case No.  24-cv-04996-LJC
8                 Plaintiff,
                                              **ORDER DENYING MOTION TO STAY**
9          v.
                                              Re: Dkt. No. 30
10   FACE CO., LLC, et al.,
11                Defendants.
12
13   **I.      INTRODUCTION**
14          Plaintiff Vicious Brands, Inc., doing business as Saints & Sinners, brings this action

15   against Defendants Face Co., LLC, Skin Saint, LLC, and Holly Cutler, alleging that Defendants

16   infringed Plaintiff's trademark and fraudulently applied for a similar trademark.  The Court

17   previously denied Defendants' motion to dismiss the case for lack of personal jurisdiction and

18   improper venue, or in the alternative, to transfer the case to the Eastern District of Michigan.  ECF

19   No. 25.[1]  Defendants now move to stay the case pending the resolution of administrative

20   proceedings before the Trademark Trial and Appeal Board (TTAB) of the U.S. Patent and

21   Trademark Office (PTO), where Plaintiff has opposed Defendants' application to register their

22   mark.  The Court previously found the matter suitable for resolution without oral argument and

23   vacated the hearing.  *See* Civ. L.R. 7-1(b); ECF No. 38.  Having considered the parties' papers and

24   arguments, and for the reasons discussed below, the Motion to Stay is DENIED.[2]

25

26   _____

27   [1] *Vicious Brands, Inc. v. Face Co., LLC*, No. 24-cv-04996-LJC, 2024 WL 4753287 (N.D. Cal.
     Nov. 12, 2024).  Citations herein to documents filed in the docket of this case refer to page
     numbers as assigned by the Court's ECF filing system, unless otherwise specified.
28   [2] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28
     U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Allegations of the Complaint

For convenience, this section summarizes Plaintiff's allegations as if true. Nothing in this summary should be construed as resolving any issue of fact that might be disputed, or to suggest that the Court has reached such a conclusion in resolving the present Motion to Stay. This summary is materially identical to the equivalent section of the Court's previous Order denying Defendants' Motion to dismiss the case or transfer venue to Michigan. ECF No. 25 at 1–2.

Plaintiff is a Nevada corporation based in Reno that has developed and sold hair care products nationwide since Plaintiff's founding in 2016, using the trade name Saints & Sinners and a logo featuring two instances of the letter S conjoined horizontally, for which it holds multiple registered trademarks. Compl. (ECF No. 1) ¶¶ 2, 20–22, 25.

Defendants Skin Saint and Face Co. are Michigan limited liability companies that sell beauty products and consultation services under the trade name Skin Saint, using a logo featuring two instances of the letter S conjoined vertically. *Id.* ¶¶ 12–13, 34. Skin Saint owns and operates a website for the sale of such products, which Plaintiff claims is confusingly similar to Plaintiff's Saints & Sinners website. *Id.* ¶¶ 12, 47. Face Co. owns and operates a brick-and-mortar store, and previously owned and operated the Skin Saint website. *Id.* ¶ 13. Defendant Cutler is the founder and owner of both Skin Saint and Face Co., and Plaintiff alleges that she is personally responsible for the conduct at issue. *Id.* ¶ 11.

Face Co. applied to register a trademark for its double-S mark in 2022, and later assigned its rights to that mark and application to Cutler. *Id.* ¶¶ 36, 39. Plaintiff has filed a notice of opposition to that application with the Trademark Trial and Appeal Board. *Id.* ¶ 52.

Plaintiff sent Defendants a cease-and-desist letter asserting infringement, but Defendants have refused to cease using their double-S mark. *Id.* ¶¶ 49–50.

Plaintiff asserts the following claims: (1) trademark infringement in violation of 15 U.S.C. § 1114, Compl. ¶¶ 61–74; (2) unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), Compl. ¶¶ 75–88; (3) fraudulent procurement of a trademark in violation of 15 U.S.C. § 1064(3), Compl. ¶¶ 89–101; (4) unfair competition in violation of section 17200 of the

California Business and Professions Code, Compl. ¶¶ 102–08; (5) common law trademark infringement, *id.* ¶¶ 109–20; and (6) common law unfair competition, *id.* ¶¶ 121–31.

## B.    TTAB Proceedings

### 1.    Procedural Overview

Registration of trademarks is not required, but the Lanham Act provides significant benefits to trademark owners who register their marks with the Patent and Trademark Office (PTO).  The Supreme Court has summarized the process of trademark registration, opposition to registration, and parallel infringement proceedings as follows:

> To obtain the benefits of registration, a mark owner files an application with the PTO. The application must include, among other things, the date of the applicant's first use of the mark, the date of the applicant's first use of the mark in commerce, the goods in connection with which the mark is used, and a drawing of the mark. The usages listed in the application—*i.e.,* those goods on which the mark appears along with, if applicable, their channels of distribution—are critical. The PTO generally cannot register a mark which so resembles another mark as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive.

> If a trademark examiner believes that registration is warranted, the mark is published in the Official Gazette of the PTO. At that point, any person who believes that he would be damaged by the registration may file an opposition. Opposition proceedings occur before the TTAB (or panels thereof). The TTAB consists of administrative trademark judges and high-ranking PTO officials, including the Director of the PTO and the Commissioner of Trademarks.

> Opposition proceedings before the TTAB are in many ways similar to a civil action in a federal district court. These proceedings, for instance, are largely governed by the Federal Rules of Civil Procedure and Evidence. The TTAB also allows discovery and depositions. The party opposing registration bears the burden of proof, and if that burden cannot be met, the opposed mark must be registered.

> The primary way in which TTAB proceedings differ from ordinary civil litigation is that proceedings before the Board are conducted in writing, and the Board's actions in a particular case are based upon the written record therein. In other words, there is no live testimony. Even so, the TTAB allows parties to submit transcribed testimony, taken under oath and subject to cross-examination, and to request oral argument.

> When a party opposes registration because it believes the mark proposed to be registered is too similar to its own, the TTAB evaluates likelihood of confusion by applying some or all of the 13 factors set out in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (CCPA

1973).[3] After the TTAB decides whether to register the mark, a party can seek review in the U.S. Court of Appeals for the Federal Circuit, or it can file a new action in district court. In district court, the parties can conduct additional discovery and the judge resolves registration *de novo*.

The Lanham Act, of course, also creates a federal cause of action for trademark infringement. The owner of a mark, whether registered or not, can bring suit in federal court if another is using a mark that too closely resembles the plaintiff's. The court must decide whether the defendant's use of a mark in commerce is likely to cause confusion, or to cause mistake, or to deceive with regards to the plaintiff's mark. In infringement litigation, the district court considers the full range of a mark's usages, not just those in the application.

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 143–45 (2015) (cleaned up).

### 2.    Plaintiff's Opposition to Defendants' Registration

After Plaintiff filed its opposition to Defendants' trademark registration[4] in January of 2024, the TTAB set a schedule in which discovery would open on March 27, 2024 and close on September 23, 2024, Plaintiff's pretrial disclosures were due November 7, 2024, Plaintiff's trial period[5] would begin November 22, 2024, Defendants' pretrial disclosures were due January 6, 2025, and Defendants' trial period would begin on January 20, 2025.  ECF No. 30-1 (Mobin Decl.) ¶ 5; ECF No. 30-5 at 4.  Plaintiffs would then have a rebuttal period ending April 6, 2025, and trial briefing would be completed by July 20, 2025.  ECF No. 30-5 at 4.

Plaintiff served interrogatories, requests for admission, and requests for production on March 27, 2024, and Defendants responded on May 13, 2024 after an agreed extension of time.  ECF No. 30-1, ¶¶ 6–11; ECF No. 30-12 at 2.  On June 10, 2024, Plaintiff sent Defendants a meet-and-confer letter asserting that Defendants had failed to verify their interrogatory responses, repeatedly failed to produce documents they had agreed to produce, asserted improper objections, and failed to provide a privilege log.  ECF No. 30-12.  Defendants responded by letter on June 21, 2024 asserting that they had by then produced documents and would remedy certain other issues.

---

[3] The U.S. Court of Customs and Patent Appeals was a predecessor to the Federal Circuit.

[4] This Order follows the parties' practice of referencing Defendants collectively in the TTAB proceeding, even though it appears that Defendant Cutler is the only applicant in that proceeding, and Defendants Skin Saint and Face Co. are not currently parties to it.  No party has suggested that the incomplete overlap in parties is relevant to the present Motion to Stay.

[5] As noted above, trials before the TTAB are conducted on the papers, with declarations and transcribed testimony submitted in evidence.  *See B & B Hardware*, 575 U.S. at 144.

United States District Court
Northern District of California

United States District Court
Northern District of California

ECF No. 30-1, ¶ 16; ECF No. 30-16.  Defendants served supplemental responses in July.  ECF No. 30-1, ¶¶ 18–20.  Plaintiff characterizes Defendants' written discovery as "deficient" and their document production as a "limited" seventy-five pages, with redactions unsupported by a privilege log.  ECF No. 35-2 (Mulcahy Decl.) ¶ 5.

Defendants served interrogatories, requests for admission, and requests for production on June 11, 2024, and Plaintiff responded on July 29, 2024, indicating that it would produce documents in response to many of Defendants' requests.[6]  ECF No. 30-1, ¶¶ 13–15, 21–23; ECF No. 30-22 at 6–19.  Plaintiff did not produce any documents in response before the TTAB stayed proceedings on October 17, 2024 (or thereafter).

Plaintiff served a notice of deposition for Cutler on June 27, 2024.  ECF No. 30-1, ¶ 17.  Plaintiff asserts that Cutler "refused to answer several important questions" at her deposition on July 26, 2024.  ECF No. 35-2, ¶ 7.  The excerpt Plaintiff provides from the transcript indicates that Plaintiff's counsel repeatedly asked Cutler if she would "be concerned" if someone else approached her manufacturer to make a product with a "logo that is almost exactly like the current Skin Saint logo," or that is "identical to your current double S logo," or that "was the same but in a slightly different font."  ECF No. 35-2 at 7–14.  Cutler's answers were at times evasive or frustrated, but she stated that "if someone had [her] exact logo, that wouldn't just be a manufacturing issue, that would be a trademark issue" or "an issue in general," and that if a similar logo "comes off as the exact same logo, [she could] see where there would be a threat."  *Id.* at 9, 12–13.  Cutler ultimately provided an answer to most if not all of the questions that Plaintiff's counsel asked on this topic, and her personal opinions about others' use of a logo that is the same as or similar to Defendants' logo would seem to be of limited evidentiary value to the resolution of Plaintiffs' claims.

Plaintiff filed the present action in this Court on August 9, 2024.  ECF No. 1.  On

---

[6] Defendants assert in their present Motion that Plaintiff agreed in its responses to "produce all non-privileged, responsive documents in its possession, custody, or control," ECF No. 30 at 9, but while Plaintiff agreed to produce documents in response to some of Defendants' requests, Plaintiff refused to produced documents in response to many other requests, ECF No. 30-22 at 6–19.  That distinction is not material to the outcome of the present Motion.

1  September 17, 2024, Plaintiff filed a motion before the TTAB to suspend the administrative

2  proceeding pending resolution of this case.  ECF No. 20-24.  In their Motion to Dismiss filed

3  September 27, 2024, Defendants asserted that Plaintiff's motion to suspend the TTAB proceeding

4  "will be opposed by Defendants."  ECF No. 16 at 9.  But Defendants apparently did not file any

5  opposition in the TTAB proceeding, and Plaintiff's motion to suspend that proceeding was

6  "granted as conceded" on October 17, 2024.  ECF No. 30-1, ¶ 24; ECF No. 30-25 at 2.[7]  Both

7  parties here use the terms "stay" and "suspend" interchangeably with respect to the TTAB

8  proceeding, and the Court understands the suspension of that proceeding as equivalent to a stay.

9  According to Defendants, discovery in the TTAB proceeding was complete at that time except for

10  Plaintiff's outstanding production of documents.  ECF No. 30 at 10.

11     Plaintiff intends to seek de novo review by a district court, with additional discovery and

12  expert opinion evidence, if the TTAB proceeding continues and Plaintiff does not prevail in

13  opposing Defendants' trademark registration.  ECF No. 35-1 (Wilson Decl.) ¶¶ 8–9.

14     **C.     The Parties' Arguments**

15        **1.     Defendants' Motion to Stay**

16     Defendants argue that the Court has broad discretion to stay a case pending the conclusion

17  of administrative proceedings, taking into account factors including whether discovery is

18  complete, whether a trial date has been set, whether a stay will simplify the trial and the issues in

19  dispute, whether a stay would unduly prejudice or disadvantage the non-moving party, and the

20  hardship to the moving party if a stay is not granted.  ECF No. 30 at 11.

21     Defendants contend that courts typically stay cases that are still in their early stages to

22  allow for the conclusion of administrative proceedings, relying largely on cases addressing patent

23  reexamination proceedings.  *Id.* at 11–12.  Defendants also argue that efficiency favors allowing

24  the TTAB to proceed first, because that body will decide the same question of likelihood of

25

26  ────────────────────
[7] The TTAB's decision refers in a footnote to a forthcoming filing by the "Opposer," but that is a
reference to Vicious Brands (the plaintiff in this case) as the party opposing trademark
27  registration, not to any party opposing Vicious Brands' motion to suspend proceedings.  ECF No.
30-25 at 2 n.1; *see* ECF No. 30-24 at 3 ("Opposer Vicious Brands, Inc. dba Saints & Sinners
28  Haircare ('Opposer') hereby requests that the Board suspend the above-captioned opposition
. . . .").

United States District Court
Northern District of California

United States District Court
Northern District of California

confusion that will be relevant to Plaintiff's infringement claims (and related claims) here, thus likely resolving, narrowing, or aiding in the resolution of the issues before the Court.  *Id.* at 12–15, 16–17. Defendants assert that the Court should disregard Plaintiff's fraudulent procurement claim because such a claim only lies against a registration that has already been issued, and Defendants' registration has not yet been resolved.  *Id.* at 10 n.1, 15–16.[8]

According to Defendants, the TTAB's suspension of its proceedings is of no consequence because the TTAB's standard procedure includes both suspending proceedings when a judicial action has been filed and resuming proceedings if the judicial case is stayed, and "[c]ourts regularly grant stays in the interest of judicial efficiency even where the alternate proceeding has been suspended."  *Id.* at 10, 16.

Defendants argue that a stay would not prejudice Plaintiff because the TTAB could resolve the question of likelihood of confusion more quickly than "any realistic trial date in this Action," and that decision would then aid in the efficient resolution of any remaining issues here.  *Id.* at 17–18.  Defendants contend that "Plaintiff waited almost 3 years to attempt to enforce its rights" after Defendants began using their mark," thus undermining any argument Plaintiff might make of urgency.  *Id.* at 18.  In contrast, Defendants argue that starting over with litigation here would cause substantial prejudice to them as a small business, risk inconsistent outcomes, and excuse Plaintiff's failure to produce documents in the TTAB proceeding.  *Id.* at 18–20.

### 2.    Plaintiff's Opposition

As a starting point, Plaintiff contends that Defendants erroneously cite a legal standard that applies specifically to requests for stays pending patent reexaminations, and that the Court should instead apply the three-factor test set by the Ninth Circuit for a "docket management stay" pending the resolution of other proceedings.  ECF No. 35 at 8–9 & n.1.

Plaintiffs also argue that Congress has not set up the TTAB (or the PTO more generally) as an exclusive arbiter of trademark issues, and that the district court is a more efficient forum to

---

[8] Asking the Court to hold a claim for relief not viable on a motion to stay is, at best, an unusual procedural posture.  The Court does not find the resolution of that issue necessary to the outcome of Defendants' Motion, and declines to reach it.

resolve the parties' disputes now that Plaintiff has asserted infringement claims. *Id.* at 9–10, 12. Plaintiff contends that the right to de novo review of a TTAB decision by a district court (with additional discovery) cuts against the use of that administrative forum, because Plaintiff intends to take advantage of that right if Defendants prevail before the TTAB, which would draw out proceedings longer than if the parties litigated Plaintiff's claims here. *Id.* at 10–12. Plaintiff further asserts that discovery already taken in the TTAB proceeding can be used in this case, reducing any potential inefficiency of litigating here after the parties began discovery in that forum. *Id.* at 12–13.

Plaintiff asserts that Defendants have not met their burden to show harm absent a stay, noting Supreme Court and Ninth Circuit precedent requiring the proponent of a stay to "make out a clear case of hardship or inequity in being required to go forward" "if there is even a fair possibility that the stay" will harm another party. *Id.* at 13 (citation omitted). Plaintiff contends that burden "is heightened in the context of a trademark infringement proceeding," because courts have recognized the urgency of a trademark owner's interest in abating purported infringement. *Id.* at 13–14. Plaintiff argues that the opportunity for de novo review of a TTAB decision could further delay resolution of that proceeding and the resumption of Plaintiff's infringement claims, and that the TTAB's current stay of its own proceeding further counsels in favor of continuing with this litigation. *Id.* at 14–15. In Plaintiff's view, Defendants have not identified any cognizable hardship. *See id.* at 13–15. For similar reasons, Plaintiffs also argue that a stay would impair Plaintiff's interests and would not simplify the issues before this Court. *Id.* at 15–16.

### 3. Defendants' Reply

Defendants argue in their Reply that although "courts apply differing approaches when delineating the precise legal standard," the factors they identified in their Motion are relevant considerations that courts use in this context. ECF No. 36 at 5–6. Defendants contend that courts have generally stayed cases filed at a similarly late stage of TTAB proceedings, and that the cases on which Plaintiff relies are distinguishable. *Id.* at 6–9, 10–12. Defendants ask the Court to disregard Plaintiff's stated intent to relitigate an adverse TTAB decision as speculative and hypothetical, and argue that a decision on the registration dispute before the TTAB would be

United States District Court
Northern District of California

useful here even if appealed.  *Id.* at 9–10, 14.

Defendants contend that Plaintiff would not be prejudice by a stay because the parties' marks have coexisted for around three years, Plaintiff has not identified instances of actual customer confusion, and Plaintiff can expect a resolution the TTAB proceeding that Plaintiff itself initiated in less than a year.  *Id.* at 12–14.  Defendants argue that they would suffer prejudice in the absence of a stay by being "forced to start over in this Court after expending substantial fees litigating the same issues in the TTAB Opposition Proceeding," and because Defendants are a smaller business than Plaintiff.  *Id.* at 14–15.

The parties dispute a number of factual contentions regarding the proceedings before the TTAB and legal or procedural issues regarding the TTAB's process and authority to manage discovery.  *See generally* ECF No. 36-1 (Phillips Decl.) (disputing assertions by Plaintiffs' declarants Diana Wilson and Kelly Mulcahy).  None of those disputes are material to the outcome of the present Motion.  The Court reaches no decisions here as to whether either party behaved appropriately in the TTAB discovery process.

## III.    ANALYSIS

### A.    Legal Standard

"A trial court may . . . enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (citing, *e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).  "District courts possess 'broad discretion' in deciding whether to grant a stay."  *Fred G. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 2:22-cv-05710-FLA (Ex), 2024 WL 5356269, at *1 (C.D. Cal. Sept. 3, 2024) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).

This form of discretionary stay is sometimes called a "docket management stay."  *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024).  The Ninth Circuit has "identified three non-exclusive factors courts must weigh when deciding whether to issue a docket

management stay: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Id.* (cleaned up); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

As a general rule, the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citing, *e.g.*, *Landis*, 299 U.S. at 255). "In *Landis*, the Supreme Court made clear that 'if there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking a stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *In re PG&E*, 100 F.4th at 1087 (quoting *Landis*, 299 U.S. at 255) (ellipsis in original). The Ninth Circuit has identified that rule as a meaningful "restriction[] on what otherwise might be an unfettered exercise of discretion," which can warrant reversal if a district court fails to account for it. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112; *see also Dependable Highway*, 498 F.3d at 1066.

### B.    Inapplicable Legal Standards

#### 1.    Defendants' Alternative Standard

Defendants' Motion cites a similar but slightly different set of factors as compared to the Ninth Circuit standard addressed above: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." ECF No. 30 at 11 (quoting *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006)). District courts have used those factors when "determining whether to stay this case pending re-examination" of a patent. *Telemac*, 450 F. Supp. 2d at 1111; *see also, e.g.*, *In re Cygnus Telecomms. Tech., LLC, Pat. Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). Although that test might overlap in practice with the Ninth Circuit's factors set forth

United States District Court
Northern District of California

above, it was developed by district courts applying Federal Circuit law in a somewhat different procedural posture.  *See In re Cygnus*, 385 F. Supp. 2d at 1023 (N.D. Cal. 2005) ("One purpose of the reexamination procedure is to eliminate trial of that issue . . . or to facilitate trial by providing the district court with the expert view of the PTO . . . ." (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983))); *ASCII Corp. v. STD Ent. USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (same).

One particularly notable distinction between the two tests is the *Telemac* factors' inquiry into whether a stay would result in "undu[e] prejudice or . . . a clear tactical disadvantage to the *non-moving* party," *see Telemac*, 450 F. Supp. 2d at 1111 (emphasis added), which appears to reverse the emphasis from the Supreme Court and Ninth Circuit's requirement that, upon "even a fair possibility" of harm caused by a stay, the *moving* party must establish a "clear case of hardship or inequity" if the stay is *not* granted, *see In re PG&E*, 100 F.4th at 1087 (quoting *Landis*, 299 U.S. at 255).  *Telemac*'s test appears more favorable for stay requests, because it places a particular burden on the non-moving party.  Whereas *Landis* and its progeny lighten the burden on the non-moving party and instead place it on the moving party—if it is even fairly possible that the stay will harm another, the moving party must clearly demonstrate hardship or inequity if the stay is not granted.  At least one court has nevertheless applied the *Telemac* factors in considering motions to stay a case pending TTAB proceedings, without addressing the distinction.  *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, No. 2:14-cv-02961-TLN-CKD, 2016 WL 1268008, at *5 (E.D. Cal. Mar. 31, 2016).[9]  This Court respectfully disagrees with the use of that framework in this context, and instead applies the factors the Ninth Circuit has stated are mandatory to any consideration of a discretionary docket management stay.  *See In re PG&E*, 100 F.4th at 1085.

### 2. Primary Jurisdiction Doctrine

Some decisions also discuss requests for stays pending resolution of TTAB proceedings

___
[9] In their Reply, Defendants cite several other cases as purportedly applying these factors, but most of those cases instead used some version of the Ninth Circuit's *CMAX* factors, albeit often without acknowledging *Landis*'s requirement for a "clear case of hardship or inequity" to support a stay.  *See* ECF No. 36 at 6.

under the doctrine of primary jurisdiction, as distinct from discretionary stays under the standard addressed above.  *E.g.*, *Branded, LLC v. Vans, Inc.*, No. SACV 20-2085 JVS (KESx), 2020 WL 8385656, at *1–2 (C.D. Cal. Dec. 7, 2020) (finding no basis for a stay under that doctrine, but granting a discretionary docket management stay).  The Ninth Circuit has rejected the application of the primary jurisdiction doctrine to TTAB proceedings, at least under most circumstances. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1162 (9th Cir. 2007).  "Likelihood of consumer confusion, which is relevant to the registration determination under 15 U.S.C. § 1052(d), is a legal standard with which courts have long-standing familiarity in resolving suits arising under both the Lanham Act and the common law of trademark infringement and unfair competition," such that "the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of the particular case."  *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 853 (2d Cir. 1988) (cleaned up); *see also Rhoades*, 504 F.3d at 1164 (endorsing *Goya Foods* as "persuasive" and "instructive").

Defendants disclaim any intent to pursue that theory here.  *See* ECF No. 36 at 5 ("[T]he cases that Plaintiff extensively relies upon . . . are totally inapposite and easily distinguishable. *Rhoades* was a primary jurisdiction case, not a discretionary stay case."); *id.* at 8 ("Here, Defendants are not claiming [under the primary jurisdiction doctrine] that the TTAB is better equipped to handle the Action.").  This Order therefore does not analyze Defendants' request for a stay under the primary jurisdiction doctrine.  To the extent Defendants nevertheless quote caselaw invoking the TTAB's "specialized knowledge" or "expertise" to justify a stay, the Court affords that consideration little weight.  *See* ECF No. 30 at 14–15 (quoting *Citicasters Co. v. Country Club Commc'ns*, No. 97-0678 RJK, 1997 WL 715034, at *2 (C.D. Cal. July 21, 1997); *Castro v. Castillo*, No. 2:23-cv-00448 TLN CKD (PS), 2024 WL 2922633, at *3 (E.D. Cal. May 15, 2024)).

### C.    Possible Risk of Damage from a Stay

The first factor that the Court considers is the harm to Plaintiff if a stay is granted.  It bears repeating that precedent calls for only a minimal showing on this factor in order to impose a heavy burden on the party seeking a stay: "'if there is *even a fair possibility* that the stay . . . will work damage to some one else,' the party seeking a stay 'must make out a clear case of hardship or

inequity in being required to go forward.'" *In re PG&E*, 100 F.4th at 1087 (quoting *Landis*, 299 U.S. at 255) (emphasis added)

Nearly every district court within the Ninth Circuit that has acknowledged the controlling "fair possibility" of damage and "clear case of hardship" standard has a denied a motion to stay pending the resolution of TTAB proceedings.  *See Expensify, Inc. v. Swappoint AG*, No. 22-cv-05720-LB, 2023 WL 8007983, at *4 (N.D. Cal. Nov. 18, 2023); *Christian Copyright Licensing Int'l LLC v. Multitracks.com LLC*, No. CV-23-00368-PHX-DWL, 2024 WL 3936382, at *2, *4 (D. Ariz. Aug. 26, 2024); *Hanginout, Inc. v. Google, Inc.*, No. 13cv2811 AJB (NLS), 2015 WL 11254689, at *5–6 (S.D. Cal. June 3, 2015); *Calista Enters. Ltd. v. Tenza Trading Ltd.*, No. 3:13-CV-01045-SI, 2013 WL 6080184, at *5–6 (D. Or. Nov. 19, 2013); *RML Jackson, LLC v. Excelled Sheepskin & Leather Coat Corp.*, No. CV 09-7823 DSF (CWc), 2010 WL 11597435, at *2 (C.D. Cal. Apr. 7, 2010); *Hansen Beverage Co. v. Cytosport, Inc.*, No. CV-09-0031-VBA(AGRx), 2009 WL 882414, at *3 (C.D. Cal. Mar. 23, 2009); *Salu, Inc. v. Original Skin Store*, No. CIV. S-08-1035 FCD/KJM, 2008 WL 11389040, at *3 (E.D. Cal. Oct. 16, 2008) (a case Defendants erroneously cite as having granted a stay, ECF No. 30 at 16, when the court in fact denied the stay).[10]

A leading treatise states that "[w]hen related proceedings are pending in both a court infringement case and in a [TTAB] opposition or cancellation case, a court will almost always refuse to stay and suspend court proceedings to wait for the [TTAB] decision." *See Christian Copyright*, 2024 WL 3936382, at *3 (quoting 5 McCarthy on Trademarks and Unfair Competition § 32:48 (5th ed.)) (final alternation in original).  That may be an overstatement, as Defendants cite

---

[10] A large majority of decision on motions to stay pending TTAB proceedings from outside the Ninth Circuit that acknowledge this standard have also denied such requests.  *See O & M Halyard, Inc. v. Sri Trang USA, Inc.*, No. 4:22-cv-622-SDJ, 2023 WL 307465, at *1, *3 (E.D. Tex. Jan. 18, 2023); *ADP, Inc. v. Wise Payments Ltd.*, No. CV 21-12457 (JXN) (JSA), 2022 WL 2833819, at *3 (D.N.J. July 19, 2022); *Int'l Watchman Inc. v. Barton Watchbands Holdco, LLC*, No. 1:19-cv-2310, 2021 WL 855119 (N.D. Ohio Mar. 8, 2021); *SafeRack, LLC v. Bullard Co.*, No. 2:17-cv-1613-RMG, 2018 WL 3696557, at *3 (D.S.C. Aug. 3, 2018); *SEFAC S.A. v. SEFAC, Inc.*, No. CV 15-3406, 2015 WL 6103267, at *3 (E.D. Pa. Oct. 16, 2015); *Exclusive Supplements, Inc. v. Abdelgawad*, No. CIV.A. 12-1652, 2013 WL 160275, at *1 (W.D. Pa. Jan. 15, 2013); *Nutraquest, Inc. v. All Am. Pharm. & Nat. Foods Corp.*, No. CIV. 06-186 (DRD), 2007 WL 121448, at *5 (D.N.J. Jan. 11, 2007); *Look Mag. Enters. S.A. v. Look, Inc.*, 596 F. Supp. 774, 779 (D. Del. 1984).

a number of cases taking the opposite approach.  Most of those cases, however—like Defendants'

briefs here—do not acknowledge the controlling *Landis* standard requiring a clear case of hardship

or inequity in order to overcome even a possibility of harm from a stay.  *E.g.*, *Castro*, 2024 WL

2922633, at *2; *Aero AG Holdings, LLC v. Summit Footwear Co., Ltd.*, No. CV 20-16655 (WJM),

2021 WL 4148218, at *2 (D.N.J. Sept. 13, 2021); *Shaf Int'l, Inc. v. Ultimate Leather Apparel,*

*Inc.*, No. CV 20-2569 (JMV)(MF), 2021 WL 409757, at *3 (D.N.J. Feb. 5, 2021); *Branded*, 2020

WL 8385656, at *3; *V.V.V. & Sons*, 2016 WL 1268008, at *4–6; *Santana's Grill, Inc. v.*

*Castaneda*, No. 03-CV-2340-L(RBB), 2004 WL 7331445 (S.D. Cal. June 3, 2004); *Citicasters*,

1997 WL 715034.  This Court finds those decisions generally unpersuasive for failure to address

controlling precedent.

As far as this Court is aware, only one in-circuit decision that (briefly) acknowledged the

"fair possibility" of harm and "clear case of hardship or inequity" requirement in its discussion of

the legal standard nevertheless granted a stay, without discussing that standard specifically in its

analysis of harm to either the proponent or opponent of the stay.  *Lodestar Anstalt v. Bacardi &*

*Co.*, No. CV 16-06411-GHK (FFMx), 2016 WL 7635955, at *2, *4 (C.D. Cal. Nov. 16, 2016).

*Lodestar* may have applied a more forgiving standard for the defendant's showing of

hardship based on its conclusion that the plaintiff did "not provide any evidence indicating that it

would suffer harm in the event of a stay," aside from attorney arguments regarding harm from

infringement, which the court afforded "no weight in the equitable analysis." *Id.* at *4 & n.2.  Its

consideration of that issue relied entirely on three decisions denying or reversing preliminary

injunctions.  *See id.* (citing *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.

1984); *Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991); *Main-Amherst Bus.*

*Ass'n, Inc. v. Adams*, 461 F. Supp. 1077, 1082 (W.D.N.Y. 1978)).  In doing so, the *Lodestar* court

appears to have flipped the burden of proof, and equated the need for an affirmative showing of

irreparable injury to obtain a preliminary injunction with the threshold question on a motion to

stay of whether "there is even a fair possibility that the stay . . . will work damage to some one

else," *see Lockyer*, 398 F.3d at 1112.  This Court therefore respectfully disagrees with *Lodestar*'s

analysis on the issue of whether there is a fair possibility of damage if the stay is granted.

14

Notably, although not addressed by either the parties here or the court in *Lodestar*, the party opposing a stay in the Ninth Circuit's *Lockyer* case offered no evidence with its briefs to the district court, instead resting on attorney argument regarding the nature of the claims at issue and the relief sought. *California ex rel. Lockyer v. Mirant Corp.*, No. C-02-1787-VRW, Mot. for Determination of Applicability of Exemption to Automatic Stay, ECF No. 43 (N.D. Cal. Aug. 27, 2003); *id.*, Reply, ECF No. 56 (N.D. Cal. Oct. 16, 2003). The Ninth Circuit nevertheless reversed the district court's decision granting a stay, relying in large part on the plaintiff's request for injunctive relief to distinguish the case from *CMAX*—a case where a plaintiff "alleged no continuing harm and sought no injunctive or declaratory relief" but instead "sought only damages," and the Ninth Circuit declined to disturb a stay. *Lockyer*, 398 F.3d at 1110, 1112 (discussing *CMAX*, 300 F.2d at 268–69). The *Lockyer* decision did not inquire as to the plaintiff attorney general's likelihood of success on the claim for injunctive relief, instead discussing the potential harm "*[i]f* the Attorney General's Clayton Act claim has merit," and finding "more than a 'fair possibility' of harm to the Attorney General." *See id.* at 1112 (emphasis added).

That case also involved other factors militating against a discretionary stay, like the Ninth Circuit's conclusion that the parallel bankruptcy proceeding was "unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court." *Id.* at 1113. Its discussion of the plaintiff's request for injunctive relief in the context of the *Landis* standard, as summarized above, is nevertheless instructive.

Here, Plaintiff seeks injunctive relief, including an injunction against Defendants' continued use of a competing mark that is allegedly confusing to Plaintiff's customers. *See* ECF No. 1 (Compl.) at 19, ¶ 1 (Prayer for Relief). That relief is not available from the TTAB; "only the district court can award damages or injunctive relief in an infringement action." *Rhoades*, 504 F.3d at 1164 n.12. Courts have recognized that in trademark infringement cases, "'there is often some urgency' in continuing the litigation. . . because '[o]ngoing harm, possibly irreparable, may be accruing'"—without inquiring as to the merits or likelihood of success of the claim. *Calista Enters.*, 2013 WL 6080184, at *5 (quoting *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 80 (1st Cir. 1996)).

Although Defendants vigorously dispute the merits of whether the marks are confusing, they apparently acknowledge that Plaintiff's likelihood-of-confusion argument is not frivolous. ECF No. 36 at 9 (asserting, in response to Plaintiff's stated intent to appeal any adverse decision by the TTAB, that "Plaintiffs might win in the TTAB, not lose").  There is also no dispute that Defendants have sold at least some products bearing the mark at issue to customers in California, where Plaintiff purportedly conducts much of its business.  That is enough to meet the low bar of "a fair possibility" that a stay would harm Plaintiff by delaying its ability to obtain injunctive relief and thus prolonging the confusion of current or potential customers.  *See Lockyer*, 398 F.3d at 1112.  In reaching that conclusion, the Court emphasizes that it has made no finding of whether Plaintiff is likely to prevail in showing likelihood of confusion (or any other element of its claims).

Other cases on which Defendants rely do not show that a contrary result is warranted here. In *Branded, LLC v. Vans, Inc.*, for example, the Central District of California held that the plaintiff would not be damaged by a stay when the plaintiff had waited twelve years after learning of the alleged infringement before bringing suit, and trial briefing before the TTAB was set to close only "more than four months" from when the court issued its order.  *Branded*, 2020 WL 8385656, at *3.  As noted above, that case failed to address the controlling standard that "even a fair possibility" of harm can be enough to deny a stay.  It is also distinguishable on its facts.

Although Defendants assert here that Plaintiff "waited almost 3 years to enforce its rights," ECF No. 30 at 18, Plaintiff offers an uncontroverted declaration that it only learned of Defendants' use of the purportedly infringing mark in September of 2023, ECF No. 35-1 (Wilson Decl.) ¶ 5. Plaintiff sent a cease-and-desist letter the following month, ECF No. 35-2 (Mulcahy Decl.) ¶ 2, and initiated opposition proceedings a few months later in January of 2024, ECF No. 30-1 (Mobin Decl.) ¶ 3.  Plaintiff filed this action in early August of 2024, *see* ECF No. 1, based in part on Defendants' continued use of the mark at issue after Plaintiff initiated the opposition proceeding, ECF No. 35-1, ¶ 7.  Plaintiff has not slept on its rights in the same manner as the plaintiff in *Branded*, and the Court declines to discount Plaintiff's interest in resolving its infringement claims promptly.  *Cf. Monster Energy Co. v. My Energy Monster, Inc.*, No. 8:20-cv-1269-T-35SPF, 2020 WL 14010612, at *3 (M.D. Fla. Nov. 20, 2020) ("Monster Energy's suggestion that it requires

United States District Court
Northern District of California

1    'prompt adjudication' of its trademark infringement claims is undercut by its failure to bring this

2    action for over five years [after the start of TTAB proceedings].").

3        The delay imposed by a stay here would also be greater than the approximately four

4    months in *Branded*.  By Defendants' own estimate, it would take "nine to ten months" from when

5    this Court granted a stay until the TTAB matter was fully briefed and taken under submission.

6    ECF No. 36-1 (Phillips Decl.) ¶ 9.  Although it may have been nearing "the eve of trial" based on

7    the TTAB's extended trial-on-the-papers procedure, that characterization by Defendants is

8    somewhat misleading for a dispute that would not have been submitted for decision for the better

9    part of a year.  *See* ECF No. 30 (Mot.) at 12–13.  That is a meaningful delay before Plaintiff would

10   be able to resume proceedings in this Court towards—if it prevails—an injunction against

11   Defendants' purported infringement.  The *Branded* court did not address whether the plaintiff

12   there sought injunctive relief.  *See generally* 2020 WL 8385656.  Nor did that court account for

13   the further delay that could result from potential district court review of a TTAB decision in its

14   evaluation of harm to the plaintiff, *id.* at *3, although it addressed that issue separately in its

15   discussion of judicial efficiency, *id.* at *4.

16       The Supreme Court's decision in *B & B Hardware* sheds light on the effects, and

17   opportunities for review, of a TTAB reexamination decision.  That case concerned a dispute

18   between B & B, which used the trademark SEALTIGHT for fasteners in the aerospace industry,

19   and Hargis, which used the trademark SEALTITE for building screws.  *See* 575 U.S. at 141.  The

20   "twists and turns in the SEALTIGHT versus SEALTITE controversy" were sufficiently

21   "labyrinthine" to "fill a long, unhappy book."  *Id.* at 145.  But as was relevant to the case before

22   the Supreme Court, B & B opposed registration of Hargis's mark, and "the TTAB sided with

23   B & B," holding that the similarity between the two marks would likely cause confusion.  *Id.* at

24   146.

25       In the meantime, B & B had also sued Hargis for trademark infringement in a district

26   court.  *Id.*  The TTAB reached its likelihood-of-confusion decision before the district court, but the

27   district court declined to give any preclusive effect to that decision, and "a jury returned a verdict

28   for Hargis, finding no likelihood of confusion."  *Id.* at 146–47.  The Supreme Court reversed,

United States District Court
Northern District of California

17

holding that "likelihood of confusion for purposes of registration is the same standard as likelihood of confusion for purposes of infringement, *id.* at 154, and that unchallenged TTAB decisions *can* be preclusive in subsequent infringement actions if they satisfy ordinary principles of issue preclusion, although they will not always meet that test, *see id.* at 147–53, 158–60.

In holding that TTAB decisions can sometimes be preclusive on *separate* suits for infringement and related claims, such as the present case before this Court, the Supreme Court did not supplant the statutory right to de novo district court review of a TTAB registration decision or suggest that any preclusive effect of the administrative decision would apply in that proceeding. *See id.* at 151–52; 15 U.S.C. § 1071(b); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 37–38 (D.D.C. 2016) ("[T]he Court is confident, particularly after the Supreme Court's clarification in *B & B Hardware*, that the proper standard of review is *de novo*."), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018).[11] Neither party here disputes that whichever party loses before the TTAB could pursue de novo review in a district court.

Accordingly, if this Court stayed this case and the TTAB resumed its proceedings, the matter would likely be submitted to the TTAB in around nine or ten months. ECF No. 36-1 (Phillips Decl.) ¶ 9. Some time after that, the TTAB would issue a decision. The losing party could then seek de novo review by a district court, in a case that would likely take at least year to resolve, and potentially much longer. Plaintiff has stated that it would pursue such review if Defendants prevailed before the TTAB. ECF No. 35-1 (Wilson Decl.) ¶ 8. Defendants have not ruled out the possibility that they would do so if Plaintiff prevailed. Once *that* case was resolved, Plaintiff could pick up where it left off here, assuming the losing party did not appeal the district court's decision to the court of appeals. When they returned to this Court, the parties would have a likelihood-of-confusion ruling that *might* have preclusive effect sufficient to streamline the case—or might simply spur further litigation over *whether* it has preclusive effect. *See B & B Hardware*, 575 U.S. at 153 ("[F]or a great many registration decisions issue preclusion obviously

---

[11] *See also Paleteria La Michoacana*, 188 F. Supp. 3d at 38 n.11 ("To the extent that PROLACTO argues that *B & B Hardware* means that the TTAB's findings of fact have preclusive effect here [in an action for de novo review], it plainly misunderstands the opinion.").

1    will not apply because the ordinary elements will not be met.").  Defendants have given no

2    indication that they would cease using their mark in the interim.

3         That delay is sufficient to show "a fair possibility that the stay will work damage to"

4    Plaintiff.  *In re PG&E*, 100 F.4th at 1087 (cleaned up).  The factor of potential harm to Plaintiff

5    weighs against a stay.

6         **D.    Hardship or Inequity in Denying a Stay**

7         With a possibility of a stay causing damage established, Defendants must "must make out

8    a clear case of hardship or inequity in being required to go forward."  *In re PG&E*, 100 F.4th at

9    1087 (quoting *Landis*, 299 U.S. at 255).  Defendants have not met that burden.

10        As a starting point, "being required to defend [this] suit, without more, does not constitute

11   a 'clear case of hardship or inequity.'"  *Lockyer*, 398 F.3d at 1112.  Unnecessarily duplicative

12   proceedings might be such a hardship, but Defendants have not shown that any meaningful

13   duplication of effort would result from a stay.

14        Defendants cite caselaw finding "the need to litigate the same issues in two separate fora to

15   be a hardship."  *WheelImage Corp. v. Axial Mfg.*, No. 8:23-cv-02206-JVS (ADS), 2024 WL

16   3086679, at *2 (C.D. Cal. May 8, 2024); *Branded*, 2020 WL 8385656, at *3; *see* ECF No. 36 at

17   14.  Even aside from the fact that those decisions do not address the controlling "clear case of

18   hardship" standard, denying a stay in the present case would not require the parties to litigate the

19   same issues in separate fora, because the TTAB has already suspended its proceedings pending the

20   resolution of this litigation.  *See, e.g.*, *NCAA v. Ken Grody Mgmt., Inc.*, No. SACV 18-00153 JVS

21   (ASx), 2018 WL 5099489, at *2 (C.D. Cal. Apr. 13, 2018) ("Given that the TTAB has already

22   suspended its own proceedings and that the instant action involves infringement claims that cannot

23   be resolved by the TTAB, the Court declines to stay or dismiss this action in favor of the TTAB

24   proceedings."); *CTF Dev., Inc. v. Penta Hosp., LLC*, No. C 09-02429 WHA, 2009 WL 2524476,

25   at *2 (N.D. Cal. Aug. 17, 2009) ("Given that the TTAB has already stayed its own proceeding, the

26   best course of action is to allow the parties to take reasonable discovery and to allow defendant to

27   present the cancellation issues at summary judgment and perhaps trial.").

28        Although Defendants are likely correct that the TTAB would resume proceedings if this

United States District Court
Northern District of California

1      Court granted a stay, and some courts have stayed cases notwithstanding stays already entered by

2      the TTAB or other administrative bodies, neither outcome requires the parties to litigate

3      simultaneously in two fora.  Either the TTAB proceedings will remain suspended and this case

4      will proceed first, or this case will be stayed and the TTAB will proceed first.  Defendants have

5      not shown a clear case of hardship or inequity from choosing the former of those two options.

6      Along the same lines, Defendants' assertion that proceeding here creates a "risk of inconsistent

7      outcomes" fails to explain why that risk is any higher than if this case were stayed and the TTAB

8      went first.  *See* ECF No. 30 at 19–20.  Defendants also have not argued that they have any current

9      need to enforce their trademark against anyone else, such that delay in finalizing their registration

10     before the TTAB while this case proceeds impairs their ability to enforce their rights.  To the

11     extent Defendants assert they face greater prejudice than Plaintiff due to a disparity in financial

12     resources, ECF No. 30 at 19, they cite neither evidence showing that to be true nor legal authority

13     that it would be an appropriate consideration.

14             Nor have Defendants identified any "duplicative proceedings before the TTAB and this

15     court," *cf. Branded*, 2020 WL 8385656, at *3, when the only "proceedings" that occurred before

16     the TTAB consisted of taking discovery that presumably could also be used in this litigation.  "[I]t

17     is not unusual for parties opposing one another in two separate cases to agree that any discovery

18     provided in one such case will be deemed provided in the other."  *Rogozinski v. Reddit, Inc.*, No.

19     23-cv-00686-MMC, 2023 WL 4297583, at *5 (N.D. Cal. June 30, 2023) (rejecting an argument

20     that discovery taken in a TTAB proceeding would need to be repeated in a district court action);

21     *see also Branded*, 2020 WL 8385656, at *3 (acknowledging, while granting a stay, "that at least

22     some of the information gained through TTAB discovery would be applicable to the case at

23     hand"); *Santana's*, 2004 WL 7331445, at *1 (asserting, in granting a stay, that "there would be

24     little in the way of new discovery required" when district court proceedings later resumed).  The

25     Court expects that the parties here will be able to use discovery already taken in the TTAB

26     proceeding, thus reducing or eliminating any need for duplicative discovery.

27             Defendants seek to distinguish Judge Chesney's decision denying a stay in *Rogozinski v.*

28     *Reddit, Inc.* based on her characterization that "the TTAB proceedings [had] not progressed to an

advanced stage." ECF No. 36 at 14–15 (quoting *Rogozinski v. Reddit, Inc.*, No. 23-cv-00686-MMC, 2023 WL 4297583, at *4 (N.D. Cal. June 30, 2023)). But there, like here, "the parties [had] conducted some written discovery, . . . no expert discovery [had] been conducted, . . . and no dispositive motions [had] been filed." *Rogozinksi*, 2023 WL 4297583, at *4. The posture is not identical: the parties there had taken no depositions, as compared to one deposition that occurred here; and TTAB discovery had not closed in that case, while it had at least nearly closed in this one. *See id.* But especially when the TTAB does not appear to have resolved any disputes between the parties in this case, the similarities between the two cases are more significant than the differences.

*Lodestar*, apparently the only in-circuit case to both acknowledge the controlling legal standard and grant a stay pending TTAB proceedings, addressed hardship to the party seeking the stay as follows:

> The third factor we consider is "the hardship or inequity which a party may suffer in being required to go forward." *CMAX*, 300 F.2d at 268. Bacardi submits no evidence that it would suffer hardship if this case went forward. However, it would clearly be inequitable for this case to proceed. Lodestar initiated the TTAB proceeding in April 2014. Thereafter, Lodestar served Bacardi & Co. with numerous requests for admission, interrogatories, and requests for document production, and the parties prepared dispositive motions. It was not until the day before dispositive motions were due that Lodestar filed its complaint in our court. After dragging Bacardi & Co. through more than two years of litigation before TTAB, Lodestar should not be allowed to start all over again in a different forum on the eve of TTAB's decision.

*Lodestar*, 2016 WL 7635955, at *4.

Unlike in that case, there is no indication that the parties here wasted their efforts preparing dispositive motions before the TTAB—or any other motions, besides Plaintiff's unopposed motion to suspend—before Plaintiff filed this action and the TTAB suspended its proceedings.[12] Instead, they merely conducted discovery that is likely also to be relevant here, which does not

---

[12] The Court takes judicial notice of the docket for the TTAB proceeding as a matter of public record. *See* U.S. Patent & Trademark Office, Trademark Trial and Appeal Board Inquiry System, Opposition No. 91289269, available at https://ttabvue.uspto.gov/ttabvue/v?pno=91289269. That docket shows no motions besides Plaintiff's motion to suspend, and no opposition to that motion filed by Defendants. But even if the Court did not consider that docket, Defendants have made no showing that the parties litigated any contested issues before the TTAB.

United States District Court
Northern District of California

clearly impose any hardship or inequity on Defendants.  The parties would not, in any meaningful sense, be required to "start all over again" in this Court.  *Cf. id.*

Some district court cases from outside the Ninth Circuit have also granted a stay despite acknowledging the need for a "clear case of hardship or inequity," including the District of Delaware's decision in *Tigercat International, Inc. v. Caterpillar Inc.*, No. 16-cv-1047-GMS, 2018 WL 2049816, at *6 (D. Del. May 2, 2018).  That case was filed at a similar stage of the TTAB proceedings as here, "only ten days before the close of . . . discovery and two months before the start of trial before the TTAB."  *Id.*  But that TTAB proceeding involved "three-years of contentious discovery," with "[d]iscovery and procedural disputes between the parties during the opposition proceedings require[ing] intervention by the TTAB and two Federal District Court Judges from the Eastern District of Pennsylvania and the Western District of Arkansas," causing the "TTAB [to] extend[] the discovery and trial dates seven times."  *Id.* at *1, *6.  Here, TTAB proceedings lasted less than a year, and do not appear to have involved any contested motions.  Assuming for the sake of argument that *Tigercat* involved a sufficiently "clear case of hardship or inequity" to warrant a stay, the case before this Court does not involve nearly the same degree of delay and potentially wasted effort—if any, when discovery from the TTAB process is likely usable here—as what the District of Delaware found "unacceptable" in the case before it.  *See id.* at *6.[13]

In another out-of–circuit case, a district court recited the *Landis* standard requiring "a clear case of hardship or inequity" to grant a stay "if there is even a fair possibility" that the stay would cause harm, but did not specifically identify *any* harm or inequity in proceeding, and instead appears to have rested its decision to grant a stay largely (and perhaps exclusively) on considerations of judicial efficiency.  *Taco Mamacita, LLC v. Wilco Holdings, LLC*, No. 1:21-cv-62, 2022 WL 16542580, at *19 (E.D. Tenn. Oct. 29, 2022).  It is difficult to reconcile that analysis

---

[13] The district court case in *Tigercat* was also a declaratory relief action brought by the party accused of infringement rather than the party asserting infringement, and the court found the plaintiff's argument that a stay would "'perpetuate [a] cloud' over its mark" unpersuasive.  2018 WL 2049816, at *5.  That posture is distinguishable from the injunctive relief against purported infringement that Plaintiff seeks here.

with the Supreme Court's rule that, if there is even a possibility of harm, the party seeking a stay "must" demonstrate clear hardship or inequity in proceeding. *Landis*, 299 U.S. at 255. At least in the Ninth Circuit, the efficiency factor "standing alone is not necessarily a sufficient ground to stay proceedings." *In re PG&E*, 100 F.4th at 1085 (citation omitted).

Finally, while Plaintiff's failure to produce documents during the TTAB proceeding does not redound in Plaintiff's favor, the Court finds no clear inequity in Plaintiff choosing to pursue infringement litigation several months after initiating an opposition proceeding, when Defendants have continued to use the purportedly infringing mark. (To be clear, and as noted above, this Order should not be construed as expressing any opinion on the merits of Plaintiff's claims.) Whatever prejudice Defendants might have suffered from Plaintiff's previous failure to produce documents can be remedied through discovery in this case. As a starting point, the Court is inclined to require that Plaintiff promptly produce the documents it previously agreed to produce in the TTAB proceeding if it has not done so already, and will address that issue at the upcoming case management conference.

Plaintiff has demonstrated the possibility that staying this case would harm its interest in promptly resolving its infringement claims, and thus, Defendants must make a clear showing of hardship or inequity to justify their request for a stay. For the reasons discussed above, they have not met that burden. That alone is likely sufficient reason to deny Defendants' Motion. The Court nevertheless briefly addresses the final factor of judicial efficiency and the orderly course of justice below.

### E.    Orderly Course of Justice

The third factor that courts in the Ninth Circuit must weigh when considering a discretionary stay is "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268). Here, those considerations overlap significantly with the potential prejudice to the parties, both of whom raise concerns about delay and inefficiency. As is likely clear from the Court's discussion above regarding the potential for such prejudice, the Court finds that this final factor also favors denying Defendants' Motion.

United States District Court
Northern District of California

1    As discussed above, "TTAB proceedings are subject to relitigation" through de novo

2    review by a district court, "which makes deferral to the TTAB inefficient where pending

3    infringement claims are at issue." *Calista Enters.*, 2013 WL 6080184, at *4. Unlike a typical

4    appeal, that process for review may involve additional "discovery and . . . new evidence not

5    presented originally to the USPTO." *See Snap Inc. v. Vidal*, 721 F. Supp. 3d 1070, 1073 (C.D.

6    Cal. 2024). If the Court entered a stay, the delay to this case might extend well beyond the nine or

7    ten months that Defendants expect the TTAB would need to reach a decision, and instead require

8    the resolution of a separate district court action and any subsequent appeal. Accordingly, "if, as

9    here, a potential infringement claim requires the district court to resolve much or all of the

10   registration issues, it would waste everyone's time not to settle the registration issue now, in

11   district court." *Rhoades*, 504 F.3d at 1165 (cleaned up);[14] *see also Beijing Tong Ren Tang (USA),*

12   *Corp. v. TRT USA Corp.*, No. C-09-00882 RMW, 2009 WL 5108578, at *3 (N.D. Cal. Dec. 18,

13   2009) (holding, where a plaintiff "alleged infringement of its trademarks," that "it would be more

14   efficient to settle the registration issues along with the infringement issues in the instant case

15   rather than staying the case pending resolution of the Trademark Board Action").

16   Depending how the issues are decided, it is possible that neither this case nor the TTAB

17   proceeding would resolve the dispute pending in the other forum. For example, this case might be

18   resolved on other grounds besides likelihood of confusion, the uses of Defendants' mark stated in

19   their application (and thus before the TTAB) might prove to be distinct from the full scope of

20   actual uses relevant to Plaintiff's infringement claims, or some other procedural distinction might

21   stand in the way of issue preclusion. It is also possible that a decision in either forum could

22   substantially narrow the disputes remaining in the other forum or inform their resolution. But this

---

[14] *Rhoades*, which considered arguments based on the primary jurisdiction doctrine, is not directly on point here, where Defendants disclaim any argument under that doctrine. *See* ECF No. 36 at 5, 8. *Lodestar* also distinguished *Rhoades* as not addressing a situation where "the TTAB proceeding ha[d] the potential to moot [the plaintiff's] principal claim," *see* 2016 WL 7635955, at *4, which Defendants contend the TTAB could also do here if it finds no likelihood of confusion, ECF No. 30 at 14. The Court does not treat *Rhoades* as dispositive of the present Motion, but finds aspects of its reasoning informative.

1  Court is capable of resolving more of the issues in dispute than the TTAB, and the Court's

2  decision would not generally be subject to relitigation through a de novo proceeding with new

3  discovery.

4         This Court's schedule may also permit a trial sooner than the parties anticipate. *Cf.* ECF

5  No. 30 (Mot.) at 18 (asserting that the close of trial briefing previously set by the TTAB for July

6  "is undoubtedly sooner than any realistic trial date in this Action"); ECF No. 35 (Opp'n) at 11–12

7  (noting a median of around thirty-five months to resolve cases through trial in this district). This

8  case may be particularly suitable for an expedited schedule when the parties have already

9  completed at least some relevant discovery through the TTAB proceeding, and when "summary

10 judgment is generally disfavored in the trademark arena." *Snap*, 721 F. Supp. 3d at 1074 (quoting

11 *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)). The parties

12 should be prepared to address the possibility of an expedited trial at the upcoming case

13 management conference.

14        As discussed above, most cases applying the controlling legal standard have denied

15 requests to stay judicial proceedings pending the resolution of administrative proceedings. The

16 Court recognizes that some of those cases concerned somewhat different facts and procedural

17 postures than are present here, and that other cases have granted such motions. The fact remains

18 that TTAB can address only limited issues, and its decision is subject to more extensive

19 relitigation than a judgment of this Court. The Court finds that under the circumstances of this

20 case, the orderly course of justice favors proceeding with this litigation.

21 **IV.    CONCLUSION**

22        For the reasons discussed above, Defendants' Motion to Stay is DENIED.

23        **IT IS SO ORDERED.**

24 Dated: March 10, 2025

25

26

27 LISA J. CISNEROS
   United States Magistrate Judge

28

United States District Court
Northern District of California