UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICIOUS BRANDS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> FACE CO., LLC, et al., <br><br>  Defendants. | Case No.  24-cv-04996-LJC <br><br> **ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 50 |

## I.  INTRODUCTION

Plaintiff Vicious Brands, Inc., doing business as Saints & Sinners, brings this action against Defendants Face Co., LLC, Skin Saint, LLC, and Holly Cutler, alleging that Defendants infringed Plaintiff's trademark and falsely advertised Defendants' skincare products.  The Court previously denied Defendants' motion to dismiss the case for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the case to the Eastern District of Michigan, ECF No. 25,[1] and also denied Defendants' motion to stay the case pending the resolution of administrative proceedings before the Trademark Trial and Appeal Board, ECF No. 40.[2]  Defendants now move to dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for July 29, 2025.  For the reasons discussed below, Defendants' Motion is GRANTED in part and DENIED in part.  Plaintiff may file a

---

[1] *Vicious Brands, Inc. v. Face Co., LLC*, No. 24-cv-04996-LJC, 2024 WL 4753287 (N.D. Cal. Nov. 12, 2024).  Citations herein to documents filed in the docket of this case refer to page numbers as assigned by the Court's ECF filing system, unless otherwise specified.
[2] *Vicious Brands, Inc. v. Face Co., LLC*, No. 24-cv-04996-LJC, 2025 WL 754068 (N.D. Cal. Mar. 10, 2025).

1  second amended complaint no later than August 8, 2025.³

2  **II.    BACKGROUND**

3      **A.    Plaintiff's Allegations**

4      Because a plaintiff's allegations are generally taken as true in resolving a motion under

5  Rule 12(b)(6), this section summarizes relevant allegations of the First Amended Complaint as if

6  true. Nothing in this Order should be construed as resolving any question of fact that might be

7  disputed.

8      Since 2016, Plaintiff has developed and sold haircare products under the Saints & Sinners

9  trade name, using a mark that includes two horizontally conjoined instances of the letter S:



13  1st Am. Compl. (FAC, ECF No. 48) ¶ 22. Plaintiff has registered trademarks that include that

14  mark. *Id.* ¶ 24. Plaintiff promotes and sells its products throughout the United States and

15  internationally, through channels including celebrity styling events, Amazon Premium Beauty, and

16  various publications and media outlets. *Id.* ¶¶ 28–33. According to Plaintiff, its mark is well

17  known by the public. *Id.* ¶ 34.

18      Defendants sell beauty consultation services and skincare products under the Skin Saint

19  trade name, using a mark that consists of two vertically conjoined instances of the letter S:



23  *Id.* ¶ 52. Defendants created that mark in 2020, began using it in 2021, and applied for registration

24  in 2022, but Plaintiff first learned of it in 2023. *Id.* ¶¶ 54, 56–57. Defendants use similar stylistic

25  elements on their website to Plaintiff's website, including the same "Philosopher" font. *Id.* ¶ 58.

26  According to Plaintiff, the similarities between the marks and the parties' use of them are likely to

---

³ The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

confuse "the purchasing public and the trade," and Defendants are knowingly perpetuating a false connection between the parties and their products. *Id.* ¶¶ 66–69.

Although Plaintiff does not currently sell skincare products, it has been planning to expand into that related market since 2019. *Id.* ¶ 35; *see generally id.* ¶¶ 35–42.  Plaintiff's first skincare product is nearly ready for market, having been delayed only "due to efforts to finalize the fragrance." *Id.* ¶ 38. Plaintiff has also historically "incorporated skincare ingredients in its hair care products, with a particular focus on scalp health." *Id.* ¶ 39.

According to Plaintiff, "Defendants have made specific false and misleading claims regarding their products' efficacy" on Defendants' website, which are "literally false and deceptive because they lack credible scientific evidence or substantiation." *Id.* ¶¶ 47–49.  Plaintiff cites the following "[e]xamples" of such false statements:

- "Medical Grade"
- "94% reduction in cellular damage due to UVB exposure."
- "98% decrease in free radical formation, resulting in UV protected skin."
- "Quickly delivers equivalent results to one injection of collagen filler"
- "190% increase in elastin production after 11 days."
- "179% increase in collagen production and 194% increase in collagen production after 11 days."
- "8-times increase in anti-oxidant protection."
- "The Wrinkle + Acne Cure."

*Id.* ¶ 47. Plaintiff also attaches screenshots of several pages of Defendants' website, which include claims as to certain products, not all of which are identifiable from the screenshots provided. *Id.* ¶ 48 & Ex. A. Plaintiff alleges that Defendants' false statements "threaten[] Plaintiff's ability to compete effectively in the skincare market by diverting consumer attention and sales away from Plaintiff's forthcoming products." *Id.* ¶ 51.

Plaintiff asserts the following claims for relief: (1) trademark infringement in violation of 15 U.S.C. § 1114, FAC ¶¶ 71–84; (2) unfair competition and false designation of origin in

3

violation of 15 U.S.C. § 1125(a), FAC ¶¶ 85–98; (3) false advertising in violation of 15 U.S.C. § 1125(a)(1)(B), FAC ¶¶ 99–107; (4) unfair competition in violation of section 17200 of the California Business and Professions Code, FAC ¶¶ 108–14; (5) common law trademark infringement, *id.* ¶¶ 115–26; and (6) common law unfair competition, *id.* ¶¶ 127–37.  The First Amended Complaint omits a claim for fraudulent procurement of a trademark that Plaintiff had included in its original Complaint.  *See* Compl. (ECF No. 1) ¶¶ 89–101.

### B. The Parties' Arguments

Defendants ask the Court to dismiss Plaintiff's trademark claims (including derivative unfair competition claims) for lack of likelihood of confusion, arguing that the marks are dissimilar on their face, that the parties sell unrelated goods through different distribution channels, that the parties have coexisted for years without actual confusion, and that Plaintiff has not plausibly alleged any intent by Defendants to cause confusion.  ECF No. 50 at 9–12.  Plaintiff argues that resolution of likelihood of confusion at the pleading stage is disfavored, ECF No. 51 at 12–14, and dispute Defendants' characterization of the marks and Plaintiff's allegations, *id.* at 14–19.  In their reply, Defendants rely on screenshots from the parties' respective websites and social media marketing, Patent and Trademark Office filings regarding other brands, and typographic and syllabic analysis of the parties' marks and trade names, among other arguments, to assert that there is no likelihood of confusion.  ECF No. 53 at 5–15.

With respect to Plaintiff's false advertising claim, Defendants argue that Plaintiff has not satisfied Rule 9(b)'s requirement to plead claims sounding in fraud with particularity, ECF No. 50 at 13, that Plaintiff lacks Article III standing because Plaintiff has not alleged "imminent" entry to this skincare market or intent to target customers in Defendants' hometown of Bingham Falls, Michigan, *id.* at 14–15, and that Plaintiff has not established standing under the Lanham Act because Plaintiff has not included sufficient details about its forthcoming skincare products to determine whether it will complete with Defendants' products, *id.* at 15–16.  Plaintiff contends that it has alleged the facts reasonably available to it regarding Defendants' purportedly false advertising, and that it has sufficiently established standing under both Article III and the Lanham Act.  ECF No. 51 at 19–22.

4

Both parties offer extensive materials for judicial notice—Plaintiff with its opposition brief, and Defendants with their reply. ECF Nos. 52, 54, 55. Plaintiff filed objections to Defendants' reply evidence. ECF No. 57. The Court disregarded portions of those objections as an unauthorized surreply to the extent they were directed to Defendants' arguments rather than to the evidence Defendants had submitted for judicial notice, and stated that no further briefing would be permitted. ECF No. 58.[4]

## III.  LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted). A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[5]

A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). "Threadbare recitals of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal conclusions" or "mere conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint, with the exception of materials incorporated by reference in a complaint or materials subject to

---

[4] Defendants requested leave to file a short response to the portions of the objections that the Court allowed to stand. ECF No. 59. As discussed further below, the Court finds the materials offered by both parties for judicial notice irrelevant to the outcome of the present Motion, and therefore DENIES that request as moot.
[5] Rule 9(b)'s more stringent pleading standard for claims sounding in fraud is discussed separately below in the context of Plaintiff's false advertising claim.

judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6) unless it is clear the complaint cannot be saved by any amendment. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "[L]eave to amend should be freely granted 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). Generally, leave to amend may be denied only if allowing the amendment would unduly prejudice the defendant, cause undue delay, or be futile, or if the plaintiff has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## IV. ANALYSIS

### A. Trademark Infringement and Related Claims

Claims under the Lanham Act for trademark infringement and unfair competition, as well as related state law claims, generally require a plaintiff to show a "likelihood of consumer confusion" due to similarities between competing marks. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016). Defendants move to dismiss Plaintiff's trademark and unfair competition claims solely for failure to allege likelihood of confusion. ECF No. 50 at 9–12. At least for the purpose of the present Motion, Plaintiff does not dispute Defendant's premise that such a showing is necessary for all of the claims in the First Amended Complaint other than Plaintiff's false advertising claim, which this Order discusses separately below. *See generally* ECF No. 51 (Opp'n).

> To determine whether a likelihood of consumer confusion exists, our court relies on the eight-factor *Sleekcraft* test, which reviews: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a rote checklist. A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances.

*JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (cleaned up);

*see also, e.g.*, *Doctor's Best, Inc. v. Nature's Way Prods., LLC*, __ F.4th __, No. 24-2719, 2025 WL 1934166, at *6 (9th Cir. July 15, 2025); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 & n.11 (9th Cir. 1979).

### 1. Strength of Marks

Unique, distinctive, and "arbitrary" or "fanciful" marks are considered stronger than generic or descriptive marks, with "suggestive" marks falling somewhere in between. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). Neither party addresses that factor here, and the Court therefore affords it little weight. But neither mark is in any way descriptive of the product being sold, so this factor does not favor dismissal for lack of a likelihood of confusion.

In their Reply, Defendants assert for the first time that other similar marks abound in the haircare and skincare fields, asking the Court to take judicial notice of records from the Patent and Trademark Office. ECF No. 53 at 11–13. Common usage of similar marks can "weaken" even a "fanciful" mark that is "conceptually strong." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164–65 (9th Cir. 2009). The Court declines to place significant weight on arguments that Defendants wholly failed to raise in their Motion, even where Defendants were responding to a brief, questionable assertion in Plaintiff's Opposition that "there is no evidence that other senior users are using marks similar to Plaintiff's." ECF No. 51; *see, e.g.*, *Nathanson v. Polycom, Inc.*, No. 13-3476 SC, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) (citing, *e.g.*, *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006)) (declining to consider arguments first raised in a reply). But in any event, such a "weakening" effect is an "offsetting consideration[]" that tends to negate the value of an otherwise strong mark; it does not necessarily invert this factor to weigh *against* confusion. *See One Indus.*, 578 F.3d at 1165 ("Based upon these offsetting considerations, we agree with the district court's apparent view that the first *Sleekcraft* factor, at best, weighs slightly in favor of finding confusion.").

### 2. Relatedness of Goods

The parties dispute whether haircare and skincare products are sufficiently related for this factor to favor a likelihood of confusion. Defendants may be correct that "[h]aircare and skincare

7

treat different body parts, fulfill different needs, are non-substitutable and non-competitive," ECF No. 50 at 11, but that is not the correct—or at least not complete—inquiry for this factor.

A plaintiff "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor.  Related goods (or services) are those which would be reasonably thought by the buying public to come from the same source *if* sold under the same mark." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012) (cleaned up) (emphasis added).  Plaintiff alleges, and the Court takes as true for the purpose of this Motion, that the "skincare market shares overlapping consumer demographics, marketing channels, and product attributes with hair care, making the extension of [Plaintiff's] trademark rights into this category expected and consistent with industry practices," FAC ¶ 41, and that "[m]arket research and industry analysis confirm significant consumer overlap between hair care and skincare product categories," *id.* ¶ 27.  Viewing the allegations in the light most favorable to Plaintiff, it is reasonable to infer (and consistent with common sense) that a single company might sell both haircare and skincare products under the same mark—regardless of whether the Court considers the articles Plaintiff submits for judicial notice of companies doing just that.  *See* ECF Nos. 52-1 – 52-5.  Notably, Defendants do not return to this factor in their Reply.  *See generally* ECF No. 54.

This factor therefore favors a likelihood of confusion, although perhaps not as strongly as it might if the parties currently competed directly.

### 3. Similarity of Marks

The Ninth Circuit has "developed three axioms that apply to the 'similarity'" analysis: 1) Marks should be considered in their entirety and as they appear in the marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and, 3) Similarities weigh more heavily than differences." *Entrepreneur Media*, 279 F.3d at 1144.

Defendants rely on the Ninth Circuit's decision in *One Industries, LLC v. Jim O'Neal Distribution, Inc.*, where the panel affirmed summary judgment for the defense based in large part on a lack of similarity between two marks that both consisted of a stylized letter O, both used for the sale of directly competing motorcycle products.  578 F.3d 1154, 1162–63 (9th Cir. 2009) (summary judgment).  The marks in that case had significant differences: one was a rounded letter

1    O followed by an apostrophe, and the other was a disconnected O created by "two angular
2    symbols . . . placed in such a way that a 'Z'-shaped space appears between the two." *Id.* at 1163
3    (ellipsis in original).
4      As previously noted, both marks here consist primarily of two conjoined instances of the
5    letter S, arranged in different ways and with other stylistic differences. Plaintiff's mark is
6    reproduced here on the left, while Defendants' is on the right:

 

10     The marks have meaningful differences, such that someone comparing them side by side
11   would never consider them to be the same mark. Looking to how the marks "appear in the
12   marketplace," *Entrepreneur Media*, 279 F.3d at 1144, Defendants also ask the Court to take
13   judicial notice of websites and other materials indicating that the parties often use different colored
14   packaging, with "Plaintiff primarily us[ing] purple" while "Defendants use black and white." ECF
15   No. 50 at 11 n.9; *see* ECF No. 53 at 8–10.
16     On the other hand, and unlike the parties' wholly different trade names in *One Industries*—
17   a case decided on summary judgment, not on the pleadings—both parties here use their marks in
18   conjunction with a trade name that features the word "Saint" (or its plural form "Saints"). It is at
19   least conceivable that a consumer might remember, or perhaps describe to a friend, an experience
20   with a beauty product with a double-S logo and a name that includes "Saint," leading a consumer
21   to confuse the parties' products when considering a subsequent purchase. Weighing similarities
22   "more heavily than differences," *Entrepreneur Media*, 279 F.3d at 1144, and viewing the
23   allegations in the light most favorable to Plaintiff, the Court declines to hold on the pleadings that
24   differences between the marks warrant dismissal.

    **4. Evidence of Actual Confusion**

26     Defendants assert that, "[t]hrough omission, Plaintiff's FAC concedes that there have been
27   no instances of actual consumer confusion during the four years that the parties' logos have
28   coexisted in the marketplace." ECF No. 50 at 12. Plaintiff is correct that the lack of such an

allegation in a complaint, or even a plaintiff's lack of knowledge of confusion at the outset of a case, is not a concession that such confusion has never occurred. *See* ECF No. 51 at 18.

"The failure to *prove* instances of actual confusion is *not* dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999); *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 876 (9th Cir. 2014). In *Brookfield*, the court found a party's *concession* that no confusion occurred during years of coexistence to carry significant weight. 174 F.3d at 1050 ("West Coast, however, did not state that it could not *prove* actual confusion; rather, it conceded that there has been none. This is a crucial difference."). The record before the Court does not reflect any such concession by Plaintiff here.

In *Cohn v. Petsmart, Inc.*, the Ninth Circuit acknowledged the general principle that an absence of evidence of actual confusion is not generally noteworthy, but found a lack of such evidence to weigh against a likelihood of confusion where "the parties used the same trademark in the same city for six years to market closely-related goods and services," even in the absence of a concession that no confusion occurred. 281 F.3d 837, 842 (9th Cir. 2002). But that case was decided on summary judgment, while discovery is ongoing here. *See* ECF No. 51 at 18 n.2 ("Plaintiff is currently conducting discovery into actual consumer confusion between the marks."). The Court declines to place significant weight at this stage of the case on Plaintiff's failure to allege instances of actual confusion.

### 5. Marketing Channels

In addressing the parties' marketing channels, Defendants place significant weight on Plaintiff's acknowledgment that Defendants sell their products, in part, from a physical location in Michigan. ECF No. 50 at 11; *see, e.g.*, FAC ¶ 61 (alleging sales "in the Face Co. brick-and-mortar location"). But Plaintiff also alleges that Defendants sell products through Defendants' website, FAC ¶¶ 14, 15, 61, which Plaintiffs allege is stylistically similar to Plaintiff's, *id.* ¶¶ 7, 58. Plaintiff alleges that Defendants' internet sales include sales to California, where Plaintiff conducts substantial business, *see id.* ¶¶ 18, 20, 34, and the parties have previously submitted

10

evidence to the Court of such sales, *see* ECF No. 25 at 11–12.

Defendants contend that such internet sales are "irrelevant as a matter of law." ECF No. 50. Defendants, however, overstate the holding of the case. Instead, the case upon which Defendants rely afforded "little weight" to both parties' marketing on the internet in light of its ubiquity, and therefore found the marketing channels factor "equivocal." *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("[T]he district court's determination that because both parties advertise on the Internet this factor weighed in favor of [a likelihood of confusion] was incorrect.").

Defendants also cite in their Reply, ECF No. 53 at 6 n.3, a more recent unpublished Ninth Circuit decision that found "[t]he near absence of any overlap in marketing or distribution channels weighs heavily against a finding that reverse confusion is likely" when the parties sold their products through their own separate websites and brick-and-mortar locations. *Aliign Activation Wear, LLC v. Lululemon Athletica Canada, Inc.*, No. 21-55775, 2022 WL 3210698, at *1 (9th Cir. Aug. 9, 2022). But that decision is not precedential, and Plaintiff here alleges somewhat more overlap than was present in *Aliign*. Plaintiff alleges that the parties use stylistically similar websites, FAC ¶¶ 7, 58, and both market their products through social media and television, *id.* ¶¶ 28, 45, 61. Both parties offer screenshots of the parties' Instagram accounts for judicial notice. ECF Nos. 52-6, 52-7, 54-4,

Instagram is perhaps as ubiquitous now as internet marketing in general was when the Ninth Circuit decided *Playboy* in 2004, so this factor does not carry a great deal of weight. But Plaintiff's contention that beauty-minded shoppers could be exposed to both products on Instagram (and other internet marketing channels) is plausible. Thus, the Court declines to treat this factor, at least on the pleadings, as weighing meaningfully in favor of Defendants.

### 6. Type of Goods and Degree of Care

Courts consider the type of good in determining the degree of care that a reasonable consumer would be expected to exercise, which in turn informs the underlying question of the likelihood of confusion.

11

> Likelihood of confusion is determined on the basis of a reasonably prudent consumer. What is expected of this reasonably prudent consumer depends on the circumstances. We expect him to be more discerning—and less easily confused—when he is purchasing expensive items, *see, e.g., Official Airline Guides,* 6 F.3d at 1393 (noting that confusion was unlikely among advertisers when the products in question cost from $2,400 to $16,000), and when the products being sold are marketed primarily to expert buyers. We recognize, however, that confusion may often be likely even in the case of expensive goods sold to discerning customers. On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely. *See, e.g., Gallo,* 967 F.2d at 1293 (wine and cheese).

*Brookfield*, 174 F.3d at 1060 (cleaned up)

Neither Defendants' Motion nor Plaintiff's Opposition addressed this consideration. In their Reply, Defendants add new arguments about the sophistication of the parties' customers, characterizing that issue as among "four of the most important *Sleekcraft* factors." ECF No. 53 at 6. The Court affords no weight to those arguments, which Defendants failed to raise in their Motion. *See Romm*, 455 F.3d at 997. In any event, Defendants rely primarily on a series of district court decisions for the proposition that consumers of cosmetics and skincare products tend to be discerning. ECF No. 53 at 6 (citing cases). Even though courts often address this factor based on assumptions regarding reasonable consumers' behavior, in this Court's view, inquiring how consumers typically approach a particular class of products implicates factual questions that could benefit from an evidentiary record. The Court therefore declines to resolve this factor at this stage of the case.

### 7. Defendants' Intent

The assessment of the intent factor "is different when [courts] consider a forward confusion theory than it is [for] a reverse confusion theory, because the relevance of intent varies with the underlying theory of confusion." *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017). "When considering forward confusion, [courts] ask whether defendant in adopting its mark intended to capitalize on plaintiff's good will." *Id.* (citation and internal quotation marks omitted). The intent inquiry is more flexible for a reverse confusion case, where "typically neither junior nor senior user wishes to siphon off the other's goodwill," and might include evidence that "the defendant knew of the mark, should have known of the mark, intended

12

to copy the plaintiff, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion." *Id.* at 934–35 (citation and internal quotation marks omitted).

Defendants characterize this as a "forward confusion" case, with Plaintiffs alleging that Defendants are seeking to capitalize on Plaintiff's goodwill by essentially tricking customers into believing that the Defendants' products are made by Plaintiff. ECF No. 53 at 15. But Plaintiff's allegations embrace both forward and reverse confusion, asserting also a likelihood that consumers could mistakenly believe "that [Plaintiff's] products are offered by Defendants, or are in some way sponsored by or connected with Defendants." FAC ¶ 69.

Plaintiff does not allege that Defendants knew of or intentionally copied Plaintiff's mark when Defendants created theirs, as might be relevant for Plaintiff's "forward confusion" theory. Instead, Plaintiff alleges that Defendants *could* have learned of Plaintiff's trademark registrations and continued to use their mark after becoming aware of Plaintiff's, FAC ¶ 93, a more limited form of "intent" that could perhaps fit somewhere in the flexible framework of a reverse confusion case. But such actual or constructive knowledge by Defendants sheds little light on the ultimate question of whether *consumers* are likely to be confused, and "intent to confuse consumers is not required for a finding of trademark infringement." *Marketquest*, 862 F.3d at 934 (quoting *Brookfield*, 174 F.3d at 1059). The Court affords this factor little weight.

### 8.    Likelihood of Expansion of Product Lines

"A strong likelihood that either party may expand his business to compete with the other favors a finding of infringement." *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Defendants do not address this factor. Plaintiff plausibly alleges that it is developing skincare products and that such expansion between haircare and skincare is natural and expected in the beauty industry. FAC ¶¶ 35–42. Plaintiff also seeks judicial notice of news coverage of skincare companies expanding into the haircare market. ECF Nos. 52-1 – 52-5.

As discussed below in the context of Plaintiff's false advertising claim, Plaintiff has not alleged specifically that its skincare products will compete directly with Defendants' products, at least when viewed through the somewhat strict concept of competition that the Ninth Circuit has

13

1   adopted in considering statutory standing for such a claim. But Plaintiff's more general
2   allegations that it is not unusual for skincare and haircare companies to expand from one field to
3   another are plausible, regardless of whether the Court considers the articles Plaintiff offers for
4   judicial notice. This factor favors Plaintiff, albeit perhaps not as strongly as if Plaintiff had offered
5   more specific allegations regarding its forthcoming skincare products.

\* \* \*

"Because the [likelihood of confusion] determination is based on a non-exhaustive, multi-factor, fact-intensive inquiry," the Ninth Circuit has "cautioned against granting summary judgment in these cases." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016); *see also* ECF No. 40 at 25 (this Court's Order denying a stay, noting that "summary judgment is generally disfavored in the trademark arena" (citation omitted)). It follows that courts should be at least as cautious before resolving such cases on the pleadings. That said, Ninth Circuit precedent "does not preclude the district court from determining likelihood of confusion as a matter of law, either through dismissal or summary judgment," and the Ninth Circuit has affirmed dismissal where it is clear from the pleadings "that the parties' services are unrelated and there is no likelihood of confusion." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860–61 (9th Cir. 1996); *see also Mintz v. Subaru of Am., Inc.*, No. 16-cv-03384-MMC, 2016 WL 5909360, at \*2 (N.D. Cal. Oct. 11, 2016) (granting a motion to dismiss based on dissimilar marks and "totally unrelated" products: calendars sold by the plaintiff, as compared to vehicles sold by the defendant), *aff'd*, 716 F. App'x 618 (9th Cir. 2017).

This not a case like *Murray*, where the Ninth Circuit considered the plaintiff's "'man-on-the-street' consumer surveys" for commercial product research to be so "unrelated" to the defendant's dial-in surveys during television talk shows that the court could find "no likelihood of confusion" as a matter of law. *Murray*, 86 F.3d at 860–61. This is instead a case where there are alleged facts that favor both parties.

Some considerations supporting Defendants' position include the facts that the parties do not (yet) directly compete with one another, the use of a double-S mark in the beauty industry is not unique to these parties, the marks do not arrange their S's in the same configuration or use the

14

1  same typographical style, the parties are based in different areas of the country, and the parties
2  have coexisted for several years.  On the other hand, for example, both marks consist of two
3  interlocking instances of the letter S, both parties use them in connection with a trade name
4  featuring the word "Saint" (or its plural form "Saints"), both operate in the beauty industry (where
5  it does not seem implausible that a company might sell both haircare and skincare products), and
6  both promote their products on social media and sell them over the internet to at least some
7  customers throughout the country.  Whether all of that is enough to support an inference of likely
8  consumer confusion is a question better addressed on a factual record.

9  Perhaps the facts will show that the parties' respective customers have never heard of the
10 other party's product, or that they have no trouble differentiating the marks when exposed to them.
11 Or perhaps customers are prone to confuse these at-least-somewhat-similar marks and
12 accompanying trade names, either erroneously believing that they indicate related brands
13 operating in different submarkets of the beauty industry, or failing to recall the distinctions and
14 wholly conflating one mark with the other.  The present record is not so clear as to allow the Court
15 to presume either outcome.  Construing the First Amended Complaint in the light most favorable
16 to Plaintiff, the Court determines that it includes sufficient allegations at least to support a
17 plausible inference of likely consumer confusion.

18 That remains true regardless of whether the Court considers the voluminous materials the
19 parties have submitted for judicial notice, and the Court finds it unnecessary to parse exactly
20 which exhibits are or are not subject to notice.  Regardless of where the line is drawn, the Court is
21 left with considerations pointing in both directions.  Defendants offer no dispositive exhibit that
22 would in itself compel a ruling in their favor as a matter of law.  When the finder of fact's ultimate
23 task will be to weigh and balance competing evidence to predict the likelihood of confusion, the
24 Court hesitates to resolve that "non-exhaustive, multi-factor, fact-intensive inquiry," *JL Beverage*,
25 828 F.3d at 1105, based on an artificially constrained universe of whatever evidence the parties
26 manage to shoehorn in through the doctrine of judicial notice.  The parties' requests for judicial
27 notice represent a preview of a subset of the evidence they might offer at summary judgment or
28 trial, but are of little help to the present inquiry.

Defendants' Motion to Dismiss is therefore DENIED as to Plaintiff's trademark infringement and unfair competition claims.

### B.     False Advertising

Defendants' arguments regarding Plaintiff's false advertising claim can be divided into two broad categories: Plaintiff's standing to bring that claim, and the particularity of Plaintiff's allegations. The Court addresses them in turn.

#### 1.     Standing

Defendants challenge Plaintiff's standing under both Article III of the Constitution[6] and the statutory requirements of the Lanham Act.

The constitutional issue turns on the imminence of Plaintiff's alleged risk of harm. "From Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-of-powers principles underlying that limitation, [courts] have deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "The plaintiff must have suffered *or be imminently threatened with* a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.* (emphasis added).

Defendants acknowledge that an imminent future injury can be sufficient, but argue that Plaintiff has not sufficiently alleged imminent harm in the absence of details of when and how it intends to bring skincare products to market. ECF No. 53 at 17–18. Neither party cites authority addressing exactly *how* imminent a future harm must be to establish standing. *See id.*; ECF No. 50 at 14–15; ECF No. 51 at 20–21. Because Plaintiff's false advertising claim is subject to dismissal on other grounds discussed below, and developments between now and any amendment

---

[6] Constitutional standing implicates a district court's subject matter jurisdiction, and therefore might more properly have been presented under Rule 12(b)(1) than Rule 12(b)(6), but the standard of review for a facial challenge to jurisdiction is substantially similar to the standard for a motion under Rule 12(b)(6). *See Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 & n.6 (9th Cir. 2024); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

16

1    may alter the allegations Plaintiff wishes to present on this point, the Court declines to resolve this
2    question. If Plaintiff files a second amended complaint without having yet brought a skincare
3    product to market, Plaintiff is encouraged to include more specific allegations of when it intends
4    to do so.

5    To establish statutory standing under the Lanham Act, "a plaintiff must allege an injury to
6    a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131–32 (2014). The Lanham
7    Act encompasses "likely" injuries in addition to actual past injuries, and the Ninth Circuit has
8    "generally presumed commercial injury when defendant and plaintiff are direct competitors and
9    defendant's misrepresentation has a tendency to mislead consumers." *TrafficSchool.com, Inc. v.*
10   *Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011). A plaintiff can meet that burden "using actual
11   market experience and *probable* market behavior," which in the absence of "lost sales data" might
12   be done by "creating a chain of inferences showing how defendant's false advertising could harm
13   plaintiff's business." *Id.* at 825 (cleaned up) (discussing Article III standing, before turning to
14   statutory standing).

15   A recent unpublished decision by the Ninth Circuit illustrates the degree of direct
16   competition required for Lanham Act standing. In *ThermoLife International, LLC v. BPI Sports,*
17   *LLC*, the defendant and one of the plaintiffs (Muscle Beach) both produced sports nutrition dietary
18   supplements, which allegedly "use[d] similar language to describe their health benefits, such as
19   boosting athletic performance and endurance, supporting muscle growth, and speeding recovery."
20   No. 21-15339, 2022 WL 612669, at *3 (9th Cir. Mar. 2, 2022). But the Ninth Circuit held such
21   similarities "insufficient to show direct competition" in the absence of more specific indicia of
22   competition, such as "photographs of [the] products being listed side-by-side" or "customer
23   review[s] stating a preference for one over the other," and therefore affirmed dismissal for lack of
24   statutory standing. *Id.*

25   This Court is not inclined to read *ThermoLife* as ruling out the possibility that allegations
26   of meaningful product similarities might be sufficient in some cases to support an inference of
27   competition, at least at the pleading stage. But to the extent *ThermoLife* reflects the Ninth
28   Circuit's view of how direct the parties must compete with one another to establish statutory

17

standing, Plaintiff's allegations here that it intends to produce an unspecified "product offerings in the skincare market," FAC ¶ 35, including an unspecified "first skincare product" that is "formulated and ready for market" (other than "finaliz[ing] the fragrance"), *id.* ¶ 38, fall far short. Beyond that, Plaintiff alleges only that it "will compete directly with Defendants' skincare products" and that "Defendants' false advertising . . . is likely to cause competitive injury to Plaintiff by diverting consumer attention and sales away from Plaintiff's forthcoming skincare products," *id.* ¶¶ 105–06, which are the sort of conclusory assertions the Supreme Court has held insufficient to state a claim. *See Iqbal*, 556 U.S. at 678–79. The Court agrees with Defendants that Plaintiff would need to "allege that it intends to offer skincare products similar to those sold by Defendants," *see* ECF No. 50 at 14, which would likely require alleging *facts* about both Plaintiff's forthcoming skincare product(s) and Defendants' products.[7]

Because Plaintiff has not plausibly alleged that it will compete specifically with Defendants products in the skincare market, Plaintiff's Lanham Act false advertising claim is DISMISSED for lack of statutory standing. The Court grants Plaintiff leave to amend to cure that defect.

### 2.     Particularity

Though Plaintiff's false advertising claim is subject to dismissal for lack of statutory standing as discussed above, the Court also addresses the parties' arguments regarding the sufficiency of Plaintiff's allegations of fraud, in an effort to avoid relitigating the same issues if Plaintiff chooses to amend that claim.

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

> Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just

---

[7] Defendants' argument that Plaintiff must "allege facts showing it will compete for Defendants' customer base, which is limited to customers who visit Defendants' MedSpa in Bingham Farms, Michigan," is less persuasive. *See* ECF No. 50 at 14. Plaintiff alleges that Defendants sell products to consumers in California, FAC ¶¶ 18, 20, and the Court previously considered evidence of such sales in denying Defendants' motion to dismiss for lack of personal jurisdiction. ECF No. 25 at 11–12.

> deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction.
>
> Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (cleaned up).

Plaintiff does not dispute that Rule 9(b) applies to its false advertising claim, but argues that its allegations meet that standard, at least based on the circumstances of the case and the facts reasonably available to Plaintiff. *See* ECF No. 51 at 19–20.

Plaintiff's First Amended Complaint only identifies with particularity a few statements Plaintiff believes to be false and the context in which they were made. Cross referencing the "[e]xamples" listed in the body of the First Amended Complaint, against the screenshots provided as Exhibit A, it is possible to tie only the following statements to particular products:

- "Quickly delivers equivalent results to one injection of collagen filler"
- "190% increase in elastin production after 11 days."
- "179% increase in collagen production and 194% increase in collagen production after 11 days."
- "8-times increase in anti-oxidant protection."
- "The Wrinkle + Acne Cure."

FAC ¶ 47. The context of the other statements listed in paragraph 47 (including the products they purportedly related to) is not apparent, nor is it clear whether Plaintiff intends to allege that other statements included in the screenshots are false.

A more universal problem, though, is that Plaintiff has not offered any explanation for why it believes Defendants' statements "lack credible scientific evidence or substantiation." *See id.* ¶ 49. As Plaintiff notes, the Ninth Circuit recognizes an exception to Rule 9(b)'s particularity requirement for facts that are within the knowledge of the defendant. ECF No. 51 at 19–20 (citing

1  *Rubenstein v. Neiman Marcus Grp, LLC*, 687 F. App'x 564, 567–68 (9th Cir. 2017)).  "However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Here, Plaintiff has alleged no facts to support its belief that Defendants' statements are unsupported by evidence.  That absence is particularly glaring in light of Plaintiff's admission that it "cannot reasonably be expected to" know whether Defendants' claims are false, because it "does not have access to Defendants' lab studies and product research."  ECF No. 51 at 20.

That is not to say that Plaintiff must have such concrete evidence before it brings a claim, or that there might not be reasonable explanations as to how Plaintiff reached a good faith belief that the statements are likely false without access to that sort of evidence.  In the absence of any such explanation in the First Amended Complaint, however, Plaintiff has not plausibly alleged that the statements are false with the particularity required by Rule 9(b).  Permitting a false advertising claim to go forward based on mere speculation of falsehood would contravene the Ninth Circuit's admonition that Rule 9(b) is intended in part to "deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs.'"  *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

Accordingly, even if Plaintiff had sufficiently alleged standing, the Court would still dismiss the false advertising claim for failure to allege falsehood with particularity as required by Rule 9(b).  The Court grants leave to amend to cure that defect as well.

## V.     CONCLUSION

For the reasons discussed above, Defendants' Motion is DENIED as to Plaintiff's trademark and unfair competition claims, but GRANTED as to Plaintiff's false advertising claim.  If Plaintiff wishes to purse the false advertising claim, it may file a second amended complaint addressing the defects identified in this Order no later than August 8, 2025.

**IT IS SO ORDERED.**

Dated: July 25, 2025

LISA J. CISNEROS
United States Magistrate Judge

20